[Civ. No. 35955. First Dist., Div. Four. Mar. 31, 1975.]

CLEON W. MONTGOMERY et al., Petitioners, v.
THE SUPERIOR COURT OF SOLANO COUNTY, Respondent;
LINZIE E. KRAMER, Real Party in Interest.

[Civ. No. 35956. First Dist., Div. Four. Mar. 31, 1975.]

BERNARD RENICK McMANUS et al., Petitioners, v.
THE SUPERIOR COURT OF SOLANO COUNTY, Respondent;
LINZIE E. KRAMER, Real Party in Interest.

**COUNSEL**

Leggett, Gianola, Dacey, Kramer, Sawyer & Intintoli and Charles W. Gianola for Petitioners.

John W. Witt, City Attorney (San Diego), Michael B. Poynor, Deputy City Attorney, Alfred A. Affinito, City Attorney (Pittsburg), Coombs, Dunlap, Dunlap & Champlin, W. Scott Snowden, Anthony A. Lagorio, Linley, McDougal, Meloche & Murphy, Lynn R. McDougal, Haskins, Lewis, Nugent & Newnham, Gerald J. Lewis, Higgs, Fletcher & Mack, Roger A. Hedgecock, Jennings, Engstrand & Henrikson, Donald F. McLean, Jr., Knutson, Tobin & Meyer, LeRoy W. Knutson, William P. Galstan and E. C. Sylvia as Amici Curiae on behalf of Petitioners.

Milton Goldringer, County Counsel, Billy B. Burton, Assistant County Counsel, and J. Paul Cloan, Deputy County Counsel, for Respondent.

Linzie E. Kramer, in pro. per., for Real Party in Interest.

**OPINION**

**RATTIGAN, Acting P. J.**—In *People* v. *Rhodes* (1974) 12 Cal.3d 180 [115 Cal.Rptr. 235, 524 P.2d 363], the Supreme Court held that "as a judicially declared rule of criminal procedure a city attorney with prosecutorial responsibilities may not defend or assist in the defense of persons accused of crime." (*Id.*, at pp. 186-187 [citations and fn. omitted].) In each of the present proceedings, we are required to determine whether the *Rhodes* proscription applies where the criminal defense counsel involved is not a city attorney but the law partner of one; where the city which employs the partner has taken legislative action which purports to divest him of "prosecutorial responsibilities" in

his role as its city attorney; and where the criminal defendant involved, acting with full knowledge of the *Rhodes* decision, has waived any effect thereof, as to him, and has affirmatively requested the trial court to permit defense counsel to represent him in his pending prosecution.

The petition in each of the present proceedings is for "Extraordinary Relief In The Nature Of Prohibition And/Or Mandamus." Cleon W. Montgomery and Donald A. Sawyer filed as copetitioners in 1 Civil 35955; Bernard Renick McManus and F. Paul Dacey, Jr., filed as copetitioners in 1 Civil 35956. Linzie E. Kramer is named in each petition as the real party in interest in the respective proceeding. According to the petitions, read together, the following events had occurred by November 12, 1974 (upon which date both petitions were filed in this court):[1]

Petitioner Montgomery was awaiting trial in respondent court, set by that court to commence on November 13, under an information which charged him with having committed several felonies in the cities of Fairfield and Vallejo. Petitioner Sawyer was serving as Montgomery's defense counsel under appointment as such by respondent court. Petitioner McManus was awaiting trial in that court, set by the court to commence on November 13, under an information which charged him with having committed a single felony in the City of Vallejo. Petitioner Dacey was serving as his defense counsel, and had been privately retained by McManus in that capacity.

The cities of Fairfield, Vallejo and Vacaville are all located within the County of Solano, of which respondent court is the superior court. Fairfield is 10 miles, and Vallejo 25 miles, from Vacaville.

Petitioners Sawyer and Dacey are both members of the State Bar of California and partners in the law firm of Leggett, Gianola, Dacey, Kramer, Sawyer & Intintoli (hereinafter "the firm," or "the Leggett firm"). The firm maintains offices in Vallejo, Vacaville, Fairfield and Napa.

Real party in interest Kramer is also a partner in the firm. He maintains his principal office in Vacaville, is employed "individually" by the City of Vacaville as its city attorney, and serves in that position on a

---

[1]All dates hereinafter mentioned refer to the calendar year 1974 except where otherwise indicated. Passages appearing as direct quotations in our recital of the facts are quoted from one petition or both.

part-time basis. Neither petitioner Sawyer nor petitioner Dacey, nor any other member of the Leggett firm, participates in the performance of Kramer's duties as city attorney or in the "remuneration" paid him by the City of Vacaville for the services he renders in that position.

On October 28, a judge of respondent court denied a motion by the Solano County District Attorney to disqualify petitioner Sawyer as defense counsel in another pending prosecution (which was not otherwise related to that of Montgomery or McManus).

On October 29, "considering all of the effects of the decision in . . . *People v. Rhodes,* 12 C.3d 180 [115 Cal.Rptr. 235, 524 P.2d 363], and further considering the fact that the city attorney for the City of Vacaville had only prosecuted one municipal ordinance violation in a period of ten (10) years, the [Vacaville] city council . . . at its regularly scheduled meeting, by unanimous vote passed a resolution revoking all prosecutorial duties and powers . . . [of its] . . . city attorney and provided that future code enforcement should be accomplished by special counsel."[2]

On November 6, the superior, municipal and justice court judges serving in Solano County conducted a meeting which was attended by all of them except two of respondent court's four judges. At the meeting, "said judges by a majority vote voted to disqualify . . . [petitioners Sawyer and Dacey] . . . and all other partners and associates of any city attorney and deny . . . [Sawyer and Dacey] . . . the right to handle criminal proceedings in all of the courts of the County of Solano."

The presiding judge of respondent court has informed petitioners Sawyer and Dacey "that notwithstanding the resolution passed by the

---

[2]The text of the resolution itself, a certified copy of which is appended to both petitions as an exhibit, states:

"A RESOLUTION OF THE CITY COUNCIL OF THE CITY OF VACAVILLE
REVOKING ALL PROSECUTORIAL DUTIES AND POWERS
OF THE CITY ATTORNEY, LINZIE E. KRAMER, FOR CRIMINAL CASES

"WHEREAS, Linzie E. Kramer was appointed City Attorney of the City of Vacaville on November 1, 1973; and
"WHEREAS, in his function as City Attorney, it is necessary for him to prosecute misdemeanor cases involving City ordinances;
"NOW, THEREFORE, BE IT HEREBY RESOLVED as follows:
"1. That all prosecutorial duties and powers which envolve upon the City Attorney in the criminal enforcement of the Vacaville Municipal Code are hereby revoked.
"2. All criminal code enforcement shall be accomplished by special counsel, and Linzie E. Kramer has no further criminal prosecutorial duties or powers.
"3. This resolution is intended to conform with the case of *The People -v- Douglas Lamar Rhodes.*"

City Council of the City of Vacaville, . . . [and] . . . in the absence of either a termination of the partnership interest of LINZIE E. KRAMER in . . . [the Leggett firm] . . . ; or, in the alternative, a resignation of said LINZIE E. KRAMER from his duties as part-time city attorney for the City of Vacaville," Sawyer and Dacey were both disqualified from acting as defense counsel in the pending trials of Montgomery and McManus, respectively.[3] As to petitioner Sawyer and the Montgomery prosecution, this pronouncement was formally recorded in the minutes of respondent court on November 8.

On November 11, petitioners Montgomery and McManus each signed a written waiver of the effect of any irregularity arising in their respective situation by reason of the foregoing facts and the *Rhodes* decision.[4]

[3]In a statement which precedes his signature of each petition as real party in interest, Kramer states in effect that he declines to resign as a partner in the Leggett firm or as city attorney for the City of Vacaville.

[4]In the document executed by Montgomery, which he signed under penalty of perjury, he acknowledged the details of his pending prosecution, described the specific charges pending against him, stated that he was being represented in the prosecution by petitioner Sawyer and referred to the imminent trial date. He further alleged:

"4. That I have recently and prior hereto been advised by my said attorney, DONALD A. SAWYER, that there is a professional relationship between my said attorney and LINZIE E. KRAMER, a partner in the . . . [Leggett firm] . . . , and a part-time city attorney for the City of Vacaville, County of Solano, State of California.

"5. That my said attorney, DONALD A. SAWYER, has explained to me the basic provisions of the decision in the case of THE PEOPLE OF THE STATE OF CALIFORNIA vs. DOUGLAS LAMAR RHODES, 12 C3d 180. Notwithstanding the same, I expressly waive any possible irregularities and specifically request representation by DONALD A. SAWYER.

"6. That I knowingly and intelligently understand:

"(a) That LINZIE E. KRAMER is a partner in the . . . [Leggett firm] . . . and is employed individually by the City of Vacaville . . . as part-time city attorney;

"(b) That none of the other partners in the law firm . . . or employees of said firm in any way render legal advice or assistance to the City of Vacaville;

"(c) That the monthly retainer for the position of part-time city attorney is paid directly to said LINZIE E. KRAMER, with no other partners or employees of the . . . [Leggett firm] . . . receiving any direct financial benefit;

"(d) That the prosecutorial responsibilities of said LINZIE E. KRAMER have by resolution dated October 29, 1974 been removed from the city attorney for the City of Vacaville;

"(e) That notwithstanding said resolution, LINZIE E. KRAMER might still on occasion have responsibility for advising members of the Vacaville Police Force on civil matters;

"(f) That I have been advised of all these facts and waive any irregularities which might exist because of the relationship and desire to proceed to trial with my appointed attorney, DONALD A. SAWYER."

The document executed by petitioner McManus recites the distinct details of his pending prosecution, and refers to petitioner Dacey as his defense counsel at all pertinent points. It is otherwise substantially identical to the document filed by Montgomery.

The Solano County District Attorney, "after consultation with the Attorney General's office of the State of California," has evidenced to the presiding judge of respondent court, and to petitioners Sawyer and Dacey, "a willingness" to proceed with the trials of Montgomery and McManus on the dates set for each (and with Sawyer and Dacey continuing to act as respective defense counsel), and to stipulate to pertinent facts among those mentioned above.[5]

Each petitioner includes allegations that, notwithstanding the actions taken by the City of Vacaville and the parties as described above, the presiding judge of respondent court stood firm in his refusal to permit petitioners Sawyer or Dacey to act as defense counsel in the respectively forthcoming trials. This position, it is stated, operates to deprive the criminal-defendant petitioners of their right to be defended by counsel of their choice and to deprive the attorney petitioners of their "constitutional right to earn a livelihood."

Petitioners further allege in effect that they did not seek an order temporarily staying respondent court, during the pendency of these proceedings, from applying its declared policy disqualifying the attorney petitioners in the two imminent trials. The reasons for this position, they stated, were that the Leggett firm is only one of three Solano County law firms whose membership includes a part-time city attorney, and that seven attorneys in the firm have extensive criminal defense practices and numerous cases pending which include "several major felony cases in respondent court." Petitioners asserted that, for these reasons, a stay order pending resolution of the present proceedings would create an excessive backlog of criminal cases in Solano County, impose an undue

---

[5] According to the petitions, the district attorney is willing to execute "a stipulation with the following provisions":

"1. That LINZIE E. KRAMER is employed individually by the City of Vacaville as part-time city attorney.

"2. That none of the other partners or employees of . . . [the Leggett firm] . . . in any way render legal advice or assistance to the City of Vacaville.

"3. That the monthly retainer for the position of part-time city attorney is paid directly to said LINZIE E. KRAMER, with no other partners or employees of . . . [the Leggett firm] . . . receiving any direct financial benefit.

"4. That the prosecutorial responsibilities of said LINZIE E. KRAMER have by resolution . . . been removed from the city attorney for the City of Vacaville.

"5. That notwithstanding said resolution, said LINZIE E. KRAMER might still on occasion have responsibility for advising members of the Vacaville Police Force on civil matters.

"6. That . . . [the respective criminal-defendant petitioner] . . . knowing these facts waives any irregularities which might exist because of the relationship [between his attorney and Kramer] and desires to proceed to trial with his . . . [respective] . . . attorney . . . ."

burden upon the district attorney of that county, and otherwise impede the ordinary administration of justice.

 We issued an alternative writ in each proceeding and, for the reasons stated by petitioners as just recited, we did not stay the trials of petitioners Montgomery or McManus. Consequently, and according to statements by counsel at the oral arguments which followed herein, both trials proceeded on schedule and have long since concluded. These facts immediately suggest the view that both proceedings have been rendered moot for lack of a continuing, justiciable controversy as to these four petitioners. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 462-468, pp. 4418-4423.) The proceedings, however, have generated substantial interest among members of the bar and among city attorneys in particular. The city attorneys of six cities have filed formal amicus curiae briefs with leave of this court, other city attorneys have informally expressed their concurrences therein by letter to the court, and still others formally appeared or were present at oral arguments in both proceedings. As will appear, the position of city attorney is widely held by individuals who serve their respective cities on a part-time basis and engage in extensive outside practice, including criminal work.

The circumstances indicate that we should not dismiss the proceedings on the basis of mootness (see *People* v. *West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 468 [89 Cal.Rptr. 290]) and that "public interest . . . in the orderly administration of justice" requires determination of the issues on their merits and at this time. (*DiGiorgio Fruit Corp.* v. *Dept. of Employment* (1961) 56 Cal.2d 54, 58 [13 Cal.Rptr. 663, 362 P.2d 487]. See, generally, 6 Witkin, Cal. Procedure *op. cit. supra,* Appeal, § 470, pp. 4426-4428 and cases there cited.) Acting accordingly, we have concluded that a peremptory writ of mandate must be issued in each proceeding for the reasons, and upon the terms, next discussed.

 In the principal argument advanced by its counsel (the Solano County Counsel) in opposition to the relief sought, respondent court challenges the validity of the resolution adopted by the Vacaville City Council on October 29, 1974, in which that body purportedly "revoked" "all prosecutorial duties and powers" held by its city attorney (real party in interest Kramer), declared that he had "no further criminal prosecutorial duties or powers," and provided that "[a]ll criminal code enforcement shall be accomplished by special counsel." (See the resolution's text as quoted in fn. 2, *ante.*) Respondent contends that the legislative body of a general law city cannot thus divest its city attorney of

"prosecutorial responsibilities" because they are imposed upon him by state law and may not be abrogated by local legislative action. We disagree.

Vacaville is a general law city[6] (Gov. Code, § 34102), as distinguished from a chartered city. (*Id.,* § 34101.) The duties of its city attorney are stated, generally and in broad language, in sections 41801-41803, 41803.5 and 41803.7.[7] Section 41803.7 is an enabling statute designed to implement a city attorney's prosecutorial function when he undertakes it. Section 41803.5, the only other section quoted which refers to his undertaking the function, states that he "may" prosecute certain criminal actions with the consent of the district attorney. It accordingly does not impose upon him the mandatory *duty* to do so; in the construction of the Government Code, the word "may" is "permissive" only. (§ 14.)

As none of the other sections just quoted imposes upon a city attorney a mandatory duty to prosecute municipal ordinance violations, his duty to do this must be inferred from the omnibus language of section 41803 which imposes upon him a duty to render unspecified "other legal services." This duty is mandatory because the section states that he

[6]By stipulation reached at oral argument, counsel for all parties gave us broad discretion to take judicial notice, according to law (see Evid. Code, §§ 451, 452, 459) but otherwise without limitation, of any and all facts which we deem pertinent to the proceedings. That Vacaville is a general law city is one fact noticed accordingly. In light of that fact, and except where otherwise expressly indicated, the discussion which follows in the text is limited to the duties and powers of a city attorney, and of the pertinent powers of a city council, of a general law city only.

[7]Except where otherwise indicated, statutory references hereinafter are to the Government Code. The sections here cited provide:

"41801. The city attorney shall advise the city officials in all legal matters pertaining to city business.

"41802. He shall frame all ordinances and resolutions required by the legislative body.

"41803. He shall perform other legal services required from time to time by the legislative body.

"41803.5. With the consent of the district attorney of the county, the city attorney of any general law city or chartered city within the county may prosecute any misdemeanor committed within the city arising out of violation of state law. This section shall not be deemed to affect any of the provisions of Sections 71099 or 72193. [See *infra,* this footnote.]

"41803.7. Whenever the city attorney is acting as a prosecutor in a criminal case pursuant to any provision of law or under a city charter, he shall have the power to issue subpoenas in a like manner as the district attorney."

The statutes cited in section 41803.5 are not pertinent here. One of them provides for the continuing function of a city officer, in the prosecution of misdemeanors, where the court in which he discharges it is superseded by a newly established court with territorial jurisdiction. (§ 71099.) The other refers to certain duties of a "city prosecutor" employed by a chartered city (§ 72193); as we have seen, Vacaville is a general law city. (See fn. 6 and accompanying text, *ante.*)

"shall" perform the services mentioned (§ 14), but it further provides that he is to do so only as "required from time to time" by the city council.

Since he does not have a mandatory duty to prosecute criminal actions except as so "required," it appears that the city council may validly elect (as the Vacaville City Council has elected here) *not* to require him to act as a prosecutor. Support for this conclusion is found in *Tri-Cor, Inc.* v. *City of Hawthorne* (1970) 8 Cal.App.3d 134 [87 Cal.Rptr. 311], in which it was held that the above-cited statutes (see fn. 7, *ante*) do not authorize the city attorney of a general law city to appear and defend an action against it unless the city council has expressly "authorized" (i.e., "required") him to do so by ordinance or resolution. (*Id.,* at pp. 138-139.)

The *Rhodes* court made the unqualified statement that "[t]he responsibilities of a city attorney include, inter alia, the prosecution of persons accused of violating city ordinances." (*People* v. *Rhodes, supra,* 12 Cal.3d 180 at p. 182.) Although the authorities it cited for the statement included section 41803 *(ibid.),* the court did not hold that the statute irrevocably imposed prosecutorial "responsibilities" upon a city attorney, nor did it analyze the statute itself. As we interpret section 41803, the *Rhodes* statement may properly be read to the effect that the "responsibilities" of a city include "the prosecution of persons accused of violating city ordinances," in a general law city, if the city council has "required" that he discharge this function but not otherwise. (We are not here attempting to rewrite the *Rhodes* court's statement as quoted: we are reading it in light of our interpretation of section 41803.)

As further authority for the statement under discussion, the *Rhodes* court cited *People* ex rel. *Chapman* v. *Rapsey* (1940) 16 Cal.2d 636, 643 [107 P.2d 388]. (*People* v. *Rhodes, supra,* 12 Cal.3d 180 at p. 182.) In the *Chapman* case, the question was whether the city attorney of a general law city could also hold the then existent office of its "city judge." (*People* ex rel. *Chapman* v. *Rapsey, supra,* at p. 637.) The *Chapman* court cited a current statute which imposed the duty to prosecute violations of municipal ordinances upon the city's chief of police, but held (1) that the statute did not deprive the city attorney of his "right and duty to carry on *the legal proceedings*" incident to any such prosecution, and (2) that, as to such prosecutions which had been initiated by the chief of police and had reached the trial stage, "the duty should devolve upon the city attorney to conduct such trials as the officer of the city *qualified for the performance of such duties.*" (*Id.,* at p. 643 [italics added].)

■ Thus, the "duty" to prosecute a municipal ordinance violation in a general law city may properly befall its city attorney because he is an "officer of the city qualified" to appear in court for the purpose. (*People ex rel. Chapman* v. *Rapsey, supra,* 16 Cal.2d 636 at p. 643.) This does not mean that the person who holds the regular position of "city attorney" is the only one who may serve the purpose mentioned; anyone who is so "qualified" may serve it when employed and "required" (see § 41803) by the city council to do so, and this includes the "special counsel" whose employment for prosecutorial purposes is contemplated in the Vacaville City Council's resolution of October 29, 1974. (See fn. 2, *ante*.)

■ We find nothing in the *Chapman* decision (nor in *Rhodes,* citing it) to dissuade us from the conclusions that the city attorney of a general law city has "prosecutorial responsibilities" only when "required" by the city council to perform them, and that the Vacaville City Council validly divested its city attorney of such responsibilities by revoking the requirement in its resolution.

■ The validity of the Vacaville resolution necessarily raises questions concerning the authority of the city to employ "special counsel" for "criminal law enforcement" (as the resolution puts it: see fn. 2, *ante*). Two sections of the Government Code (§§ 37103 and 53060) expressly authorize a general law city, and other public agencies, to employ and compensate personnel for the performance of "special services."[8] Several authorities hold that a public body may not validly do this where a regular officer or employee thereof is obligated by law to perform such services (see *Skidmore* v. *West* (1921) 186 Cal. 212, 215 [199 P. 497]) and is willing and able to do so as part of the ordinary professional functions of his position. (15 Ops.Cal.Atty.Gen. 46; 19 Ops.Cal.Atty.Gen. 153; 20 Ops.Cal.Atty.Gen. 21; *Jaynes* v. *Stockton* (1961) 193 Cal.App.2d 47, 50-56 [14 Cal.Rptr. 49].)

Although this proscription applies to a chartered city whose charter imposes upon one of its regular city officers the duty to perform the

---

[8]Section 37103 provides: "The legislative body [of a city] may contract with any specially trained and experienced person, firm, or corporation for special services and advice in financial, economic, accounting, engineering, *legal* or administrative matters. [¶] It may pay such compensation to these experts as it deems proper." (Italics added.)

As pertinent, section 53060 provides: "The legislative body of any public or *municipal corporation* or district may contract with and employ any persons for the furnishing to the corporation or district special services and advice in financial, economic, accounting, engineering, legal, or administrative matters if such persons are specially trained and experienced and competent to perform the special services required. . . . [¶] The legislative body of the corporation or district may pay from any available funds such compensation to such persons as it deems proper for the services rendered."

services in question (*Denman* v. *Webster* (1903) 139 Cal. 452, 454 [73 P. 139]), it does not apply to preclude a general law city from employing special counsel to perform prosecutorial duties where it has divested its regular city attorney of such duties. Since the city may validly act in the latter respect by electing *not* to require the city attorney to prosecute criminal actions (as we have seen), there is no regularly employed city officer whose duties preclude the employment of a prosecutor pursuant to sections 37103 and 53060; his services are "special" (see *Jaynes* v. *Stockton, supra,* 193 Cal.App.2d 47 at pp. 51-56) because no one else in the employ of the city is "qualified" to perform them. (*People* ex rel. *Chapman* v. *Rapsey, supra,* 16 Cal.2d 636 at p. 643.)

Respondent further contends that the city attorney has mandatory prosecutorial duties under state law, of which he may not be divested by local legislative action, by reason of the language of three specific statutes. The first of these is Penal Code section 373a, which expressly refers to the city attorneys of chartered cities[9] and is inapplicable here for that reason. (See text at fn. 6, *ante.*) The second (Pen. Code, § 691, subd. 5)[10] is an expression of legislative nomenclature which reaches members of a class "having by law the right or duty to prosecute." As it does not purport to *vest* such "right or duty" in anyone, those members of the class who are "designated" as "city attorneys" are limited (according to our interpretation of section 41803) to persons whose city councils have "required" them to perform prosecutorial functions. The third statute cited by respondent[11] must be read subject to the same interpretation. None of the statutes cited reflect a general "legislative scheme" under which the state has preempted the subject of

[9]Penal Code section 373a provides that the maintenance of a public nuisance is a misdemeanor, and that "it is hereby made the duty of the district attorney, or the city attorney of any city the *charter* of which imposes the duty upon the city attorney to prosecute state misdeameanors, to prosecute all persons guilty of violating this section. . . ." (Italics added.)

[10]"691. The following words have in Part 2 of this code [which is entitled "Criminal Procedure"] the signification attached to them in this section, unless it is otherwise apparent from the context: . . . 5. The words 'prosecuting attorney' include *any attorney, whether designated as district attorney, city attorney, city prosecutor,* prosecuting attorney, *or by any other title, having by law the right or duty to prosecute,* in behalf of the people, any charge of a public offense." (Italics added.)

[11]The third statute cited is Health and Safety Code section 1618, subdivision (c), which appears in chapter 4 of division 2 ("Licensing Provisions") of that code. The chapter (commencing with § 1600) regulates, and provides for the licensure of, the production and handling of the substances mentioned in its title ("Human Whole Blood, Human Whole Blood Derivatives, and Other Biologics"). The specific section provides: "1618. . . . (c) District *and city* attorneys shall prosecute violations of this chapter upon evidence of violations within their respective jurisdictions submitted by the department [i.e., by the State Department of Health: see Health & Saf. Code, § 20]."

a city attorney's duties (see *In re Lane* (1962) 58 Cal.2d 99, 102-103 [22 Cal.Rptr. 857, 372 P.2d 897]); according to our interpretation of section 41803, it reflects a contrary legislative intent to defer to city government in matters pertaining to that subject.

Respondent has also cited a zoning ordinance of the City of Vacaville which expressly or impliedly refers to the "duty" of the city attorney in connection with its enforcement.[12] As we have seen, and except as provided in the ordinance itself, the Vacaville City Attorney is not "charged by law" with its enforcement (see fn. 12, *ante,* at [1]), and it expressly states that he shall enforce it only "upon order of the city council." (See *id.,* at [2]; *Tri-Cor, Inc.* v. *City of Hawthorne, supra,* 8 Cal.App.3d 134 at pp. 138-139.) Proceedings for the "abatement" of a public nuisance (see fn. 12, *ante,* at [2]) are civil in nature. (Civ. Code, § 3491, subd. 3; Code Civ. Proc., § 731.) If the ordinance imposes criminal prosecutorial responsibilities upon the city attorney, they may nonetheless be withheld from him by the Vacaville City Council and imposed by that body upon the "special counsel" whose employment for the purpose of "criminal code enforcement" is contemplated in its resolution of October 29, 1974. (See fn. 2, *ante.*)

It may be recognized that we interpret controlling law as vesting wide latitude in city councils to define and control the duties of their city attorneys. This result is consistent with the general principle that an attorney's duties are ordinarily defined and controlled by his client. It is also consistent with the principle of "home rule" which is the constitutional foundation of cities and other "traditional units of local government in California." (See Brooks, *The Metropolis, Home Rule, And Special District* (1959) 11 Hastings L.J. 110; Cal. Const., art. XI, § 7.)

The result is a practical one, moreover, because it acknowledges the realities attending the position of a city attorney in the cities of

---

[12]Section 5 ("Enforcement") of the ordinance provides that violation there is a misdemeanor. It also states (bracketed numerals and italics added) as follows:

"[1] It shall be the duty of the chief of police of the City of Vacaville and of *all officers of said city herein and/or charged by law* [sic] *with the enforcement of this Ordinance* to enforce this Ordinance and all the provisions of the same. . . .

"[2] Any building or structure . . . erected . . . contrary to the provisions of this Ordinance . . . is hereby . . . declared to be . . . a public nuisance and *the city attorney of said city shall upon order of the city council immediately commence action or proceedings for the abatement* . . . thereof in the manner provided by law and *shall take such other steps* and shall apply to such court or courts as may have jurisdiction to grant such relief as will abate . . . such building or structure. . . ."

California, particularly the smaller ones.[13] The Attorney General, having examined these realities with respect to a particular subject, described them as follows: "In a number of the smaller cities of the state the relationship between the person appointed as city attorney and the city is of a very informal nature. An attorney is appointed at a modest retainer to render certain limited services, often he has no office in the city hall and he handles the affairs of the city as he does the affairs of other clients. There is often an agreement between the city and the attorney as to just what services the city attorney is to perform and in many cases both the attorney and the city officials are prone to look upon the attorney as an independent contractor rather than as a member of the city government." (28 Ops.Cal.Atty.Gen. 362, 364.)

Although the foregoing discussion establishes that real party in interest Kramer has validly been divested of "prosecutorial responsibilities" as city attorney for the City of Vacaville, this fact does not answer the terminal question: his continuing relationship with the city requires examination before we may determine whether—or the extent to which—he or his law partners (petitioners Sawyer and Dacey) may engage in criminal defense practice despite the *Rhodes* proscription which applies to city attorneys with "prosecutorial responsibilities." (*People* v. *Rhodes, supra,* 12 Cal.3d 180 at p. 182.)

The *Rhodes* court formulated the proscription upon the bases of (1) the practical conflict between the absolute duty owed by a defense attorney to his client and the rapport which a city attorney-prosecutor must reasonably maintain with his law enforcement associates in the employ of his city and "neighboring law enforcement agencies" (*People* v. *Rhodes, supra,* 12 Cal.3d 180 at p. 184); (2) the corollary threat to the integrity of the criminal justice system at large (*id.,* at pp. 184-185); and (3) the "compelling public policy consideration" that the actual or *apparent* incompatibility, between the role of defense counsel and that of the city attorney-prosecutor, would undermine the vital element of public confidence in the system. (*Id.,* at pp. 185-186.)

---

[13]Pursuant to the broad terms of the stipulation permitting us to take judicial notice of pertinent facts (see fn. 6, *ante*), we have compiled appropriate data concerning the cities of California. The data was provided by the League of California Cities, which may be regarded as an unimpeachable source and to which we are indebted for its assistance. According to the information made available to us from a survey conducted by the League in 1972, there were then 412 cities in the State, of which 337 were general law cities. In the latter category, 265 were under 25,000 (and 178 of these were under 10,000) in population.

In spelling out these three factors, the court consistently referred to the disparity between the duties of a defense attorney and those of a "public prosecutor." (*People* v. *Rhodes, supra,* 12 Cal.3d 180 at pp. 184-186.) Although real party in interest Kramer is no longer a "public prosecutor," as a result of the Vacaville City Council's resolution discussed *supra,* the petitions show that he "might still on occasion have responsibility for advising members of the Vacaville Police Force on civil matters." (See par. 5 of the waivers executed by petitioners Montgomery and McManus as quoted in fn. 4, and of the proposed stipulation as quoted in fn. 5, *ante.*) These residual details of his relationship with Vacaville's law enforcement personnel suggest that the *Rhodes* proscription might still be deemed to disqualify Kramer himself from engaging in criminal defense practice, and that, if they do, petitioners Sawyer and Dacey should be similarly disqualified because they are his partners.[14]

However, it does not appear that Kramer will be called upon to give advice on civil matters to personnel of "neighboring law enforcement agencies" outside of Vacaville. (See *People* v. *Rhodes, supra,* 12 Cal.3d 180 at p. 184.) If he or his partners engage in the defense of criminal prosecutions which do not involve persons employed by that city (see *id.,* at p. 184 [text at fn. 6]), the conflicts of interest perceived in *Rhodes* (*id.,* at pp. 184-185), and the "appearance of impropriety," which is to be avoided in any case because of "compelling public policy considerations" (*id.,* at p. 185), will be minimal or nonexistent in such cases.

Moreover, other pertinent factors have been shown by the records in these proceedings and by sources within the range of our stipulated judicial notice. (See fn. 6, *ante.*) Among the 412 cities of California, only 64 employ full-time city attorneys under arrangements which prohibit them from engaging in any outside practice. Eleven (11) of them permit their city attorneys to engage in limited outside practice. Each of the

---

[14]Among the opinions of the Committee on Professional Ethics of the American Bar Association (several of which were cited with approval in *People* v. *Rhodes*: see *id.,* 12 Cal.3d 180 at pp. 185 and 186), opinion No. 296 (published August 1, 1959) quotes previous opinions of the committee (Nos. 72 and 49) as follows: " 'The relations of partners in a law firm are such that *neither the firm nor any member or associate thereof may accept any professional employment which any member of the firm cannot properly accept.*' " (Italics added.)

Pertinent provisions of the Code of Professional Responsibility of the American Bar Association (effective Jan. 1, 1970) state: "DR 5-105[A] A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment. . . . DR 5-105[D] If a lawyer is required to decline employment or to withdraw from employment under DR 5-105[A], *no partner or associate of his or his firm may accept or continue such employment.*" (Italics added.)

remaining 337 cities employs a city attorney on a part-time basis and permits him to engage in outside practice without limitation. Our sources also indicate that many city attorneys in the part-time category have resigned their positions, or intend to do so, because of the *Rhodes* proscription disqualifying them from criminal practice.[15] In some of the counties with the lowest populations in the state, part-time city attorneys are among the very few practitioners who are locally available to serve as court-appointed counsel in criminal cases.[16] The continuing availability of competent attorneys to the cities and to the administration of criminal justice, in these counties and elsewhere, is a "compelling public policy consideration" (*People* v. *Rhodes, supra,* 12 Cal.3d 180 at p. 185) to be weighed in applying the *Rhodes* rule to the facts presented here.

■ We conclude that the *Rhodes* rule, its purposes, and the public interest will be served if, where a city attorney has been validly divested of prosecutorial responsibilities by the city which employs him, he or his law partners may "defend or assist in the defense" (*People* v. *Rhodes, supra,* 12 Cal.3d 180 at pp. 186-187) of a criminal action in which personnel of the employing city are not involved in any significant respect. Assessment of the latter factor in a particular case, or other questions involving application of the foregoing criteria therein, should be resolved within the sound discretion of the trial court.

This conclusion covers only the eligibility of an affected city attorney or his professional associates to defend a person accused of crime. The interests of that person must therefore be considered, because the *Rhodes* court did not reach the subject. (See *People* v. *Rhodes, supra,* 12 Cal.3d 180 at p. 185 [fn. 8].) Since an accused may waive his right to counsel altogether, if he "knowingly and intelligently" elects to do so (*People* v. *Maddox* (1967) 67 Cal.2d 647, 651 [63 Cal.Rptr. 371, 433 P.2d 163]; *People* v. *Floyd* (1970) 1 Cal.3d 694, 702 [83 Cal.Rptr. 608, 464 P.2d 64]), it follows that he may competently waive any irregularity suggested by the *Rhodes* proscription, with respect to his defense counsel, if he acts with the same knowledge and intelligence. Whether his waiver meets

---

[15]One of these individuals stated at oral argument that he had been employed as part-time city attorney by two small cities for many years, that he had already resigned one position by reason of *Rhodes,* and that he intended to resign the other if and when he could be replaced.

[16]For example, Amador County has five cities with part-time city attorneys and eight lawyers with offices in the county. The corresponding figures are two and nine for San Benito County, and two and twelve for Glenn County, respectively. (Our sources here are the aforementioned survey conducted by the League of California Cities in 1972 [see fn. 13, *ante*] and the current membership roll of the State Bar of California.)

such requisites is not established by his execution of a *pro forma* writing which states them (see fn. 4, *ante*); it is to be determined to the satisfaction of the trial court. (*In re Johnson* (1965) 62 Cal.2d 325, 335 [42 Cal.Rptr. 228, 398 P.2d 420].)

We sum up: the city attorney of a city which has validly divested him of prosecutorial responsibilities, or his professional associates in the practice of law, may defend or assist in the defense of any criminal action (1) in which personnel of the employing city are not involved in any significant respect and (2) in which the defendant has knowingly and intelligently waived any irregularity which might be perceived by reason of the *Rhodes* proscription (*People* v. *Rhodes, supra,* 12 Cal.3d 180 at pp. 186-187), subject to appropriate exercise of the trial court's discretion in a particular case.

Although respondent court's purported disqualification of the attorney petitioners herein was obviously a good faith effort to comply with the *Rhodes* proscription, it amounted to an abuse of discretion according to the principles enunciated in this decision. Mandate is therefore the appropriate remedy. (See *Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 559-562 [68 Cal.Rptr. 1, 440 P.2d 65].)

A peremptory writ of mandate will issue, in each of these proceedings, directing respondent court to conduct all future proceedings consistent with the views herein expressed.

Christian, J., and Emerson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.