TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

<table>
<tr><td>OPINION<br><br>of<br><br>DANIEL E. LUNGREN<br>Attorney General<br><br>ANTHONY S. Da VIGO<br>Deputy Attorney General</td><td>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:</td><td>No. 92-805<br><br><u>MAY 5, 1993</u></td></tr>
</table>

THE HONORABLE MICHAEL D. BRADBURY, DISTRICT ATTORNEY, COUNTY OF VENTURA, has requested an opinion on the following question:

May a general law county contract with persons to provide the same level of services, but at less expense, than presently performed by its civil service employees?

CONCLUSION

Without statutory authority, a general law county may not contract with persons to provide the same level of services, but at less expense, than presently performed by its civil service employees.

ANALYSIS

The present inquiry concerns the authority of a general law county to contract with persons to perform services currently provided by its civil service employees, on the sole basis that the services would be provided at less cost to the county. The civil service employees would be replaced by those having the new contracts, with the goal being that the county would reduce its payroll expenses.

In accordance with the nature of the inquiry, the analysis and conclusion herein are general, and do not consider special statutes which may relate to particular service classifications. (See, e.g., Gov. Code, § 25358 [contracts for maintenance personnel].)[1] The inquiry posits that the county is not chartered (Cal. Const., art. II, §§ 3, 4) and has adopted a civil service system pursuant to the County Civil Service Enabling Law (§§ 31100-31117). We conclude that the county may not

_____

[1]All undesignated statutory references hereafter are to the Government Code.

1.                                                            92-805

dispense with the services of available, qualified civil service employees in favor of contract services on the sole basis of cost savings.

There are two principal statutes which, for our purposes, shall be considered together. We have no occasion here to determine which of these statutes would prevail in the event that they are deemed inconsistent in some respect. Section 31000 states:

"The board of supervisors may contract for special services on behalf of the following public entities: the county, any county officer or department, or any district or court in the county. Such contracts shall be with persons specially trained, experienced, expert and competent to perform the special services. The special services shall consist of services, advice, education or training for such public entities or the employees thereof. The special services shall be in financial, economic, accounting (including the preparation and issuance of payroll checks or warrants), engineering, legal, medical, therapeutic, administrative, architectural, airport or building security matters, laundry services or linen services. They may include maintenance or custodial matters if the board finds that the site is remote from available county employee resources and that the county's economic interests are served by such a contract rather than by paying additional travel and subsistence expenses to existing county employees. The board may pay from any available funds such compensation as it deems proper for these special services. The board of supervisors may, by ordinance, direct the purchasing agent to enter into contracts authorized by this section within the monetary limit specified in Section 25502.5 of the Government Code."[2]

Section 53060 provides:

"The legislative body of any public or municipal corporation or district may contract with and employ any persons for the furnishing to the corporation or district special services and advice in financial, economic, accounting, engineering, legal, or administrative matters if such persons are specially trained and experienced and competent to perform the special services required.

"The authority herein given to contract shall include the right of the legislative body of the corporation or district to contract for the issuance and preparation of payroll checks.

"The legislative body of the corporation or district may pay from any available funds such compensation to such persons as it deems proper for the services rendered."[3]

In interpreting sections 31000 and 53060, we observe certain fundamental interpretive precepts. Specifically, statutes must be accorded a reasonable and common sense construction consistent with their apparent purpose and intent, practical rather than technical in nature, and which upon application will result in wise policy rather than mischief or absurdity; such

---

[2]The monetary limit specified in section 25502.5 is $100,000.

[3]The term "legislative body" as used in section 53060 includes a county board of supervisors. (§ 53000.)

indicators should be considered as context, the object in view, the evils to be remedied, the history of the times and of legislation on the same subject, public policy, and contemporaneous construction. (*San Diego Union v. City Council* (1983) 146 Cal.App.3d 947, 954; 73 Ops.Cal.Atty.Gen. 424, 425 (1990).)

It is evident that the authority to contract as provided in both sections 31000 and 53060 is expressly limited to "special services" in specified areas, and is further limited to contractors who are specially trained, experienced, and competent to perform such services. The criteria for determining the nature of special services were set forth in *Darley* v. *Ward* (1982) 136 Cal.App.3d 614, 627-628:

> "Whether services are special requires a consideration of factors such as the nature of the services, the qualifications of the person furnishing them and their availability from public sources. (*Jaynes* v. *Stockton* (1961) 193 Cal.App.2d 47, 51-52.) Services may be special because of the outstanding skill or expertise of the person furnishing them. (*Kennedy* v. *Ross* (1946) 28 Cal.2d 569, 574; *Jaynes* v. *Stockton, supra*, 193 Cal.App.2d at p. 52.) Whether services are special is a question of fact. (*California Sch. Employees Assn.* v. *Sunnyvale Elementary Sch. Dist* (1973) 36 Cal.App.3d 46, 61; *Jaynes* v. *Stockton, supra*, 193 Cal.App.2d at p. 53.)"

As indicated in *Darley*, whether the services in question may be classified as "special services" is ultimately a question of fact. (See 71 Ops.Cal.Atty.Gen. 266, 272 (1988).) It has been held, for example, that hospital management (*Darley* v. *Ward, supra,* 136 Cal.App.3d 614), research and development (*California Sch. Employees Assn.* v. *Sunnyvale Elementary Sch. Dist* (1973) 36 Cal.App.3d 46), and special counsel as prosecutor where the city attorney had not been vested with prosecutorial powers (*Montgomery* v. *Superior Court* (1975) 46 Cal.App.3d 657; compare *Jaynes* v. *Stockton* (1961) 193 Cal.App.2d 47), constitute special services.

Nothing in the cited statutes suggests that a county may contract for services without regard to the "special services" limitation, solely on the basis of cost savings. We note in this regard that in the Legislature's grant of a particular power, "`"there is an implied negative; an implication that no other than the expressly granted power passes by the grant; that it is to be exercised only in the prescribed mode . . . .""' (*Wildlife Alive v. Chickering* (1976) 18 Cal. 3d 190, 196; see 71 Ops.Cal.Atty.Gen. 266, 274-275 (1988).)

Moreover, when the Legislature has intended to grant authority to contract for the performance of services on the basis of cost savings, it has expressly so provided. In 73 Ops.Cal.Atty.Gen. 95, 97-100 (1990), we set forth at length the provisions of section 19130 pertaining to contracts for state services. Subdivision (a) of section 19130 allows the contracting of "personal services" to achieve cost savings but only if numerous specific conditions are followed. It is not to be reasonably contended, therefore, that a county may exercise such power in the absence of a grant of authority and in the absence of any specified conditions.

Finally, we note that since the Legislature has already granted the contracting authority in question to state agencies (§ 19130), it may easily so provide for counties and other local governments. Even though, for example, the state's civil service system is constitutionally protected (Cal. Const., art. VII, § 1), the Court of Appeal in *California State Employees' Assn.* v. *State of California* (1988) 199 Cal.App.3d 840, had little difficulty in upholding the validity of section 19130's "cost savings" provisions against constitutional challenge. The court stated:

> "Decisional law interprets article VII as a restriction on the `contracting out' of state activities or tasks to the private sector. [Citations.] The restriction does not

arise from the express language of article VII. [Citation.] `Rather, it emanates from an implicit necessity for protecting the policy of the organic civil service mandate against dissolution and destruction.' [Citation.]

"........

"The purposes of article VII as disclosed in the ballot argument of its predecessor, former article XXIV, are not in conflict with subdivision (a) of section 19130. The constitutional provisions relating to the civil service were adopted in part `to promote efficiency and economy in state government.' A statute dealing with the civil service which has cost savings as an object is hardly in conflict with notions of governmental efficiency and economy.

"........

"Moreover, as we have seen, an established exception to the mandate of civil service exists where the nature of the services in question is such they cannot be performed `adequately or competently or satisfactorily' by employees selected through civil service. [Citations.] Without attempting to endow the quoted words with definitive content, under a constitutional scheme which commends efficiency and economy it is reasonable to postulate that at some point a service which is more costly when performed under civil service than when contracted out may on that account be one which cannot be performed satisfactorily, adequately or competently.

"........

"We are not at liberty to remove from the Legislature the very discretion vested in it when the voters adopted first article XXIV and later article VII. The history of those articles demonstrates the voters wished to adopt a civil service system free from the whims of political partisanship and appointment. The voters did not intend, however, to impose upon the state a civil service system which eschews all considerations of fiscal responsibility and economy in favor of an infinitely expanding public payroll. Rather, the Legislature was entrusted to consider various alternatives with regard to civil service administration. In devising such alternatives, the Legislature may not ignore the purposes behind the constitutional civil service system; neither, however, must it abdicate fiscal responsibility and forego opportunities to realize substantial savings to the taxpayers. The goals of maintaining the civil service must be balanced with the goal of a fiscally responsible state government. In subdivision (a) of section 19130, the Legislature has harmonized a viable civil service as a central policy aim. [Citation.]" (Id., at pp. 844-853; fn. omitted.)

Here, we determine only that the Legislature has not acted to grant counties the same authority possessed by state agencies. Inasmuch as the present inquiry is predicated upon the assumption that the services in question are currently being performed by civil service employees,[4]

---

[4]In the absence of any suggestions to the contrary, we assume for purposes of this analysis that such services are performed adequately, competently, and satisfactorily. The sole concern presented is whether the services may be contracted outside the civil service system on the basis of cost savings alone.

we find that these are not "special services" under the express and limited terms of sections 31000 and 53060.

It is concluded that without statutory authority, a general law county may not enter into a contract with persons to provide the same level of services, but at less expense, than presently performed by its civil service employees.

* * * * *