TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-813 |
| of | : | |
| | : | May 20, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE JOHN W. WITT, SAN DIEGO CITY PROSECUTOR, has requested an opinion on the following question:

May the city council of a charter city, whose charter directs the city attorney to prosecute state misdemeanor offenses arising within the city when required by law, transfer state law prosecutorial duties from the city attorney to the county district attorney without a vote of the city electorate?

CONCLUSION

The city council of a charter city, whose charter directs the city attorney to prosecute state misdemeanor offenses arising within the city when required by law, may transfer state law prosecutorial duties from the city attorney to the county district attorney without a vote of the city electorate if the transfer is authorized by the charter.

ANALYSIS

For its own government, a city by vote of the people may adopt a city charter. Once adopted, a city charter may be amended, revised, or repealed only with electorate approval. (Cal. Const., art. XI, §§ 3, 5; Gov. Code, §§ 34450-34462.)[1]  A city which has adopted a "home rule" charter

_____

[1]All section references are to the Government Code unless otherwise indicated.

1.                                                                                        95-813

is subject to the general laws of the state with respect to matters of statewide concern; however, with respect to municipal affairs, it has plenary power and authority, limited only as expressly provided by its charter. (*Johnson* v. *Bradley* (1992) 4 Cal.4th 389, 394-397; *California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1991) 54 Cal.3d 1, 11-18.)

City charters typically grant to the city "all municipal powers, functions, rights, privileges and immunities of every name and nature whatsoever now or hereafter authorized to be granted to municipal corporations by the Constitution and laws of the State of California" and "any and all rights, powers and privileges heretofore or hereafter granted or prescribed by General Laws of the State." (See *City of San Jose* v. *Lynch* (1935) 4 Cal.2d 760, 762-763.)[2] The charter in question has such grants of authority.

In this opinion we are concerned with the duties of a city attorney of a "home rule" charter city. The charter directs the city attorney to prosecute not only violations of the city's ordinances but also, when required by law, state misdemeanor offenses committed within city limits. We are asked whether the city council may transfer this latter duty to the county district attorney without a charter amendment approved by city voters. We conclude that a vote of the electorate would be unnecessary if the transfer is authorized by the charter.

While the prosecution of city ordinances is a local matter, the prosecution of all state laws, including state misdemeanor offenses, is a matter of statewide concern, wherever committed. Accordingly, it is only through legislative authorization that a city prosecutor, whether in a general law or charter city, may prosecute state misdemeanors. (See *Montgomery* v. *Superior Court* (1975) 46 Cal.App.3d 657; *City of Merced* v. *County of Merced* (1966) 240 Cal.App.2d 763; *Oppenheimer* v. *Tamblyn* (1959) 167 Cal.App.2d 158; 65 Ops.Cal.Atty.Gen. 330, 332-333 (1982).)

The prosecution of state misdemeanor offenses is assigned generally to the district attorney of each county. (§ 26500; 20 Ops.Cal.Atty.Gen. 234 (1952).) However, city attorneys may also be authorized to prosecute such offenses within their respective cities. Section 41803.5, subdivision (a), applicable to both general law and charter cities, provides:

> "With the consent of the district attorney of the county, the city attorney of any general law city or chartered city within the county may prosecute any misdemeanor committed within the city arising out of violation of state law. . . ."

Section 72193, applicable only to charter cities, states:

> "Whenever the charter of any city situated within a district for which a municipal court has been established creates the office of city prosecutor, or provides that a deputy city attorney shall act as city prosecutor, and charges such prosecutor with

---

[2]A charter city may adopt state law in matters of municipal concern either by way of a charter provision or by ordinance where the charter is silent. (See *City of Grass Valley* v. *Walkinshaw* (1949) 34 Cal.2d 595, 597; *City of San Jose* v. *Lynch*, *supra*, 4 Cal.2d at 762-763; *Hayes* v. *Handley* (1920) 182 Cal. 273, 281; *Cutting* v. *Vaughn* (1920) 182 Cal. 151, 153.)

the duty, when authorized by law, of prosecuting misdemeanor offenses arising out of violations of state laws, he may exercise the following powers:

"(a) He shall prosecute all such misdemeanors committed within the city which are within the jurisdiction of the municipal court of the district in which such city is located, and handle all appeals arising from it. He shall draw complaints for such misdemeanors, and shall prosecute all recognizances or bail bond forfeitures arising from or resulting from the commission of such offenses. . . ."

In 20 Ops.Cal.Atty.Gen., *supra*, at 237, we discussed the predecessor statute to section 72193 as follows:

"In comparing and harmonizing the statutes here involved, so as not to work the repeal of any of them, it was evidently the intent of the Legislature to place the duty primarily upon the city prosecuting attorney to file complaints and conduct the prosecution of state misdemeanor offenses in the municipal and justice courts without relieving the district attorney of such duty if and when it may be necessary or advisable for him to act as the public prosecutor. For instance, a city prosecuting attorney may be disqualified or for some reason be unable to conduct the prosecution of a particular criminal action involving the commission of a state penal law, then it would be the duty of the district attorney to conduct such prosecution. Likewise, it would be his duty to prosecute in the municipal and justice courts when the laws of this state are not being uniformly and adequately enforced. . . ."

Consequently, when the provisions of section 72193 are implemented by a charter city, the city attorney has the primary duty of prosecuting state misdemeanors within the city, with the district attorney acting in a subsidiary or "backup" role. (See *Menveg* v. *Municipal Court* (1964) 226 Cal.App.2d 569, 571-572, quoting with approval our 1952 opinion, but noting that the Legislature may give the district attorney exclusive jurisdiction to prosecute violations of particular state laws.)[3]

Here, the charter directs the city attorney to prosecute misdemeanor offenses "as may be required of the City Attorney by law" and empowers the city to exercise "all rights, powers and privileges . . . granted . . . by General Laws of the State." If a city council is authorized by the laws of the state to transfer the city attorney's prosecutorial duties to the district attorney, and does so, the city attorney would no longer be "required" to conduct such prosecutions "by law." Accordingly, a vote of the electorate to amend such a charter provision would be unnecessary in order for the council to transfer the duties.

---

[3]When a charter city implements section 72193, the district attorney's "backup" role may be viewed as analogous to the role of the Attorney General in cases where for some reason a district attorney is unable to prosecute an offense or where there has been a breakdown in the law within the county. (See 65 Ops.Cal.Atty.Gen., *supra*, at 332; 20 Ops.Cal.Atty.Gen., *supra*, at 236.)

In examining the general laws of the state to determine which city functions may be transferred to a county, we find that sections 51300-51308 authorize a general law or charter city to contract with the county "for the performance by its appropriate officers and employees, of city functions" (§ 51301) for not more than five years (§ 51302). This statutory scheme provides for the assumption by the county of the pension rights of any transferred city employees. (§§ 51306-51308). However, the legislation is directed at the assumption by the county of *all* the powers and duties of the city officers and employees named in the contract. (See 64 Ops.Cal.Atty.Gen. 846, 847 (1981); 49 Ops.Cal.Atty.Gen. 136, 141 (1967); 16 Ops.Cal.Atty.Gen. 79, 84 (1950).) Section 51303 states:

> "The county officers and employees named in the contract shall exercise within the city all of the powers and duties conferred upon the city officers or employees named in the contract."

Here, however, the question presented involves only the assumption of part of the duties of the city attorney by the district attorney. Furthermore, any attempt to transfer *all* of the duties of an office established by a city charter would be tantamount to abolishing the office, something which, unless the charter so provides, could not be done without a vote of the people to amend the charter. (See *Scott* v. *Common Council* (1996) 44 Cal.App.4th 684, 695; 2 Ops.Cal.Atty.Gen. 306, 308 (1943).)

More germane to our inquiry are sections 51330-51335, which are applicable only to charter cities. Section 51330 states:

> "If authorized by the city charter and approved by a resolution of the board of supervisors, a city organized under a freeholders' charter may transfer any of its functions and any of the functions of an officer, board, or commission to an officer, board, or commission of the county in which the city is situated."

The board of supervisors' resolution is required to specify the functions to be transferred, the county personnel who will perform the city functions, and the compensation to be paid by the city to the county. (§ 51331.)[4] The transfer may be rescinded at any time by joint city-county action, or by either entity by giving one year's notice. (§ 51332.) City functions relating to taxes are specifically stated to be transferrable (§ 51334) and additionally "[i]f the city charter so authorizes, other functions may be transferred and performed as provided by law" (§ 51335).

---

[4]Regarding the amount of compensation that may be charged by the county, section 51350 states in part:

> "A county which provides services through its appropriate departments, boards, commissions, officers, or employees, to any city pursuant to contract or as authorized by law, shall charge the city all those costs which are incurred in providing the services so contracted or authorized. A county shall not charge a city contracting for a particular service, either as a direct or an indirect overhead charge, any portion of those costs which are attributable to services made available to all portions of the county, as determined by resolution of the board of supervisors, or which are general overhead costs of operation of the county government. General overhead costs, for the purpose of this section, are those costs which a county would incur regardless of whether or not it provided a service under contract to a city."

In our view, the charter provision quoted above ("the City is hereby authorized to exercise any and all rights, powers and privileges . . . prescribed by General Laws of the State") is sufficiently all-encompassing to constitute the authorization required by section 51335, and thus permits the transfer of state misdemeanor prosecutorial functions from the city attorney to the district attorney by the city council.[5]

We reject the suggestion that sections 51300-51350 contemplate only the transfer of true municipal functions, i.e., "municipal affairs." We believe that a charter provision which directs the city attorney to prosecute state misdemeanors as required by law, coupled with the general law authorization and mandate of section 72193, makes the statewide matter a city "function" for purposes of this legislative scheme.

We also find unpersuasive the argument that it would be improper for the city to pay the county for the district attorney's services since the district attorney already has the duty under general law to prosecute state misdemeanors. (Pen. Code, § 26500.) The city charter, in conjunction with section 72193, removes that duty from the district attorney except in a subsidiary or "backup" role to the city prosecutor. There is no "concurrent jurisdiction" in the traditional sense. The city prosecutor has both the primary *duty*, and hence the primary *right*, to initiate such prosecutions. This is to be contrasted with the situation where there is true "concurrent jurisdiction," such as where both city police officers and county sheriff deputies may arrest persons within city limits. (See 64 Ops.Cal.Atty.Gen., *supra*, at 847.)

Accordingly, we conclude that a city, whose charter directs the city attorney to prosecute state misdemeanors within the city when required by law, may transfer prosecutorial functions to the county district attorney without a vote of the people if the transfer is authorized by the charter. The county may charge the city for the prosecutorial services transferred as specified in sections 51330-51335 and section 51350. These statutory provisions contemplate that the transferred functions will be performed by county personnel. Hence, no question arises as to the possible employment rights of any transferring city employees, such as with respect to their city pension rights. Also, since the city's functions would be transferred, the district attorney would have the absolute duty to perform such functions until the transfer of duties is rescinded or terminated pursuant to law.[6]

* * * * *

---

[5]We may assume that the decision to transfer prosecutorial duties from the city attorney to the district attorney would be made by the city council in the exercise of its plenary legislative authority. (See *Montgomery* v. *Superior Court*, *supra*, 46 Cal.App.3d at 668-670; *Spencer* v. *City of Alhambra* (1941) 44 Cal.App.2d 75, 78.)

[6]We note the possibility that a city and county may enter into an agreement pursuant to the Joint Exercise of Powers Act (§§ 6500-6599) respecting the performance of various public functions. The applicability of this statutory scheme is beyond the scope of this opinion.