[S.F. No. 23503. Mar. 16, 1977.]

STEPHANIE J. DALY et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY
OF SAN FRANCISCO, Respondent;
GEORGE DUNCAN et al., Real Parties in Interest.

†Retired Chief Justice of California sitting under assignment by the Acting Chairman of the Judicial Council.

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

■■■■■■■■■

## COUNSEL

Herron & Watson, Frederick E. Watson and Patrick A. Nielson for Petitioners.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg, Deputy Attorney General, John K. Van de Kamp, District Attorney (Los Angeles), Harry B. Sondheim and Eugene D. Tavris, Deputy District Attorneys, as Amici Curiae on behalf of Respondent.

Hession, Creedon, Hamlin, Kelly, Hanson & Farbstein, Francis J. Stillman, Gerald P. Martin, Jr., and Joseph D. Ryan, Jr., for Real Parties in Interest.

## OPINION

**WRIGHT, J.**[*]—Petitioners sued numerous defendants including real parties in interest Duncan, Olsen, and Ryan for wrongful death and other torts. On depositions taken by petitioners these real parties in interest responded to questions by claiming their privilege against self-incrimination. Petitioners made a motion to the respondent trial court to nullify the claims of privilege by granting real parties in interest immunity against the use of their deposition answers, or of evidence

---

[*]Retired Chief Justice of California sitting under assignment by the Acting Chairman of the Judicial Council.

■■■■■

derived from such answers, in any criminal proceeding against them. The motion was denied and petitioners now seek a writ of mandate directing issuance of such an immunity order. They rely principally upon *People* v. *Superior Court (Kaufman)* (1974) 12 Cal.3d 421 [115 Cal.Rptr. 812, 525 P.2d 716], where, in an action *by the People* for civil penalties "intended as a deterrent against future misconduct and [constituting] a severe punitive exaction by the state" (12 Cal.3d at p. 431), we held that the People's motion for a similar immunity order should be granted for the purpose of compelling the defendants to testify on deposition.

Unlike the *Kaufman* suit, the litigation underlying the present writ proceeding is solely between private parties. No representative of the People is before the trial court. Yet the effect of requiring the real parties in interest to give self-incriminating testimony under the umbrella of the proposed immunity order would be to encumber any future criminal proceeding against any of them with a "heavy burden" by "impos[ing] on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." (*Kastigar* v. *United States* (1972) 406 U.S. 441, 460, 461 [32 L.Ed.2d 212, 226, 227, 92 S.Ct. 1653].) As will be more fully explained, we have concluded that to interpose such an obstacle to criminal proceedings over the objection of prosecuting authorities would constitute improper judicial interference with prosecutorial discretion. Accordingly, the requested immunity order should not be granted without prior fulfillment of certain conditions which include notification to prosecuting officials of the nature and scope of the proposed immunity, opportunity for those officials to object to the granting of immunity, and the absence of any such objection by such officials.

By their amended complaint petitioners seek damages for wrongful death, battery and intentional infliction of mental distress. The complaint includes the following allegations: Petitioners are the widow, minor children, and administrator of the estate of Allen W. Daly. Prior to his death on July 16, 1970, Daly was employed by the publisher of the Independent Journal, a newspaper in San Rafael. In January 1970, the newspaper's employees who were members of the International Typographers Union (ITU) and its Local No. 21 (Local 21) went out on strike. Also actively participating in the strike was San Francisco-Oakland Mailers Local No. 18 (Local 18), an affiliate of ITU, which aspired to become the union representative of the newspaper's mailer employees. After the strike commenced the newspaper continued to be published through nonunion and management employees, including Daly. ITU,

Locals 18 and 21, and numerous individuals conspired to coerce Daly and his fellow workers to withhold their services from the newspaper. Persons hired for this purpose by Frank Thurber, a member of Local 18, threw fire bombs into the Daly home on June 15 and 16, 1970. On July 4, 1970, two of these persons entered the Daly home with a drawn pistol and beat Daly and, in the presence of his wife and children, shot him. He died 12 days later. Thurber was convicted of the murder of Daly.

At the time of these events the defendants named in the present petition as real parties in interest held the following positions: Duncan was an employee of ITU placed in charge of the strike; Olsen was the president of Local 21; and Ryan was the shop steward of Local 18. The complaint joins the Marin County Labor Council, the San Francisco Labor Council, and their numerous member unions as defendants and imputes the alleged wrongful acts to them on theories of agency.

On May 29, 1974, the trial court denied petitioners' motions for a protective order under Code of Civil Procedure, section 2019, subdivision (b)(1), which would grant "use immunity" to real parties in interest Ryan and Duncan and compel them to answer questions on deposition to which they had refused to respond on grounds of self-incrimination. However, the court granted petitioners' alternative motion that Ryan and Duncan be precluded from testifying at trial unless they filed timely waivers of their privilege for purposes of discovery. Subsequently petitioners renewed their motions to grant immunity to Ryan and Duncan and made a similar motion with respect to real party in interest Olsen in light of our decision on August 27, 1974, in *People* v. *Superior Court (Kaufman), supra,* 12 Cal.3d 421. These motions were denied on June 16, 1975, in an order in which the trial court noted its view that "the granting of use immunity under the circumstances of this case would not be consistent with both legislative intent and the effective enforcement of the criminal laws."[1]

In response to the present petition an alternative writ of mandate was issued requiring the trial court either to enter an order "granting use and derivative use immunity to Real Parties in Interest and compelling them to respond to discovery" or to show cause why it had not done so. The

[1]The petition shows that on January 13, 1976, after the trial court had made the orders described in the text, real party in interest Duncan invoked his privilege against self-incrimination in refusing to answer written interrogatories of an undisclosed nature propounded to him by petitioners. Petitioners apparently did not present this additional refusal to the trial court before filing the present petition.

questions which real parties in interest Duncan, Olsen and Ryan had refused to answer on deposition on grounds of possible self-incrimination are not before us. The petition for the writ describes their refusals as based on apprehension that answers would tend to prove guilt of murder. Ryan's return to the alternative writ expressly denies that his claim of the privilege was grounded on the possibility of a murder charge. He states that the only questions he refused to answer related to his alleged conduct of a lottery or other scheme to raise money for Thurber's defense and for support of the strike and suggests that answering the questions would have placed him in jeopardy of *federal* prosecution. Duncan's memorandum opposing issuance of the alternative writ attaches a copy of petitioners' pretrial statement from which Duncan undertakes to demonstrate petitioners' intention to implicate him not only in the plot to murder Daly but also in federal crimes of conspiracy and of use of the mails and instrumentalities of interstate commerce to commit crimes of violence. Olsen has not appeared in the present writ proceeding.

■ The alternative writ was properly issued. Mandate may "be used in discovery matters to review questions of first impression that are of general importance to the trial courts and to the profession, and where general guidelines can be laid down for future cases." (*Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439]; accord: *Rudnick* v. *Superior Court* (1974) 11 Cal.3d 924, 928 [114 Cal.Rptr. 603, 523 P.2d 643]; *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 169 [84 Cal.Rptr. 718, 465 P.2d 854]; *Associated Brewers Distr. Co.* v. *Superior Court* (1967) 65 Cal.2d 583, 585 [55 Cal.Rptr. 772, 422 P.2d 332].) The power of a trial court to grant a prospective witness use immunity and derivative use immunity for the purpose of facilitating discovery by a private party is a question meeting these criteria.

■ Real parties in interest Duncan and Ryan contend that the present proceeding should be dismissed as moot because petitioners' claims against them and some of the other defendants in the underlying action have now been settled. Petitioners acknowledge that after filing their petition they agreed on a settlement of their claims against all defendants in the case (including real parties in interest) except (1) six local unions against which default judgments have been entered and (2) over 100 other local unions which were granted a summary judgment from which petitioners have taken an appeal that remains pending. However, petitioners also state that if the summary judgment is reversed

they will proceed to trial against the local unions and will take the depositions of real parties in interest who will probably again refuse to answer questions on grounds of the privilege against self-incrimination, and that petitioners will probably then move for a protective immunity order and thus again raise the principal legal issue now before us.

The trial court's disposition of any such motion would be governed by our present resolution of the legal issue under the doctrines of stare decisis (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]) and the law of the case (*People* v. *Shuey* (1975) 13 Cal.3d 835, 841 [120 Cal.Rptr. 83, 533 P.2d 211]; *People* v. *Medina* (1972) 6 Cal.3d 484, 491 fn. 7 [99 Cal.Rptr. 630, 492 P.2d 686]). In a proceeding that may otherwise be deemed moot we have discretion to resolve an issue of continuing public interest that is likely to recur in other cases (*Liberty Mut. Ins. Co.* v. *Fales* (1973) 8 Cal.3d 712, 715-716 [106 Cal.Rptr. 21, 505 P.2d 213]; *County of Madera* v. *Gendron* (1963) 59 Cal.2d 798, 804 [31 Cal.Rptr. 302, 382 P.2d 342, 6 A.L.R.3d 555])[2] and such resolution is particularly appropriate when it is likely to affect the future rights of the parties before us. (*Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 542 [63 Cal.Rptr. 21, 432 P.2d 717]; *American Civil Liberties Union* v. *Board of Education* (1961) 55 Cal.2d 167, 181 [10 Cal.Rptr. 647, 359 P.2d 45, 94 A.L.R.2d 1259]; *People* v. *West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 468 [89 Cal.Rptr. 290].) The continuing public importance of the present issue stems not only from the interests of private litigants seeking discovery and of witnesses claiming their privilege against self-incrimination but also from the impact of any immunity order upon the official duties of those charged with prosecuting crime.[3] Accordingly under all the circumstances we deem it appropriate to decide whether and under what conditions the trial court should grant the protective immunity order requested by petitioners.[4]

---

[2]Attached to the present petition are declarations of three attorneys calling our attention to other civil actions involving the present issue, each pending in a different superior court.

[3]The Appellate Committee of the California District Attorneys Association has filed a brief as amicus curiae on behalf of the respondent trial court. In applying for permission to file this brief the committee stated its view that the propriety of granting use and derivative use immunity to witnesses under the circumstances of the present case is an issue of substantial and continuing statewide importance in the administration of criminal justice. At our request the Attorney General has also filed an amicus brief dealing with the account that should be taken of the prosecutorial function in considering whether to grant such an immunity order.

[4]The petition includes a request that if we decline to issue a peremptory writ of mandate requiring the trial court to grant immunity to real parties in interest in aid of

■ Real party in interest Ryan contends that under the terms of the settlement petitioners waived any further right to obtain an immunity order as a basis for compelling his testimony over his claim of the privilege against self-incrimination. A letter from petitioners' counsel proposing the settlement states that after payment of an agreed amount for satisfaction of petitioners' claims against Local 18 and all its officers named as defendants, including Ryan, "[t]he release and dismissal as to the individual defendant officers of Local 18 would be granted and filed immediately after the said individual officers had each appeared and testified as witnesses called' under Evidence Code § 776, by the plaintiffs." The letter also includes this language relied upon by Ryan: "The release and dismissal of each individual officer named as a defendant would not be conditioned upon his testifying in any particular manner, and he would retain his privilege to take the Fifth Amendment, if he so desired while he was on the stand. He would merely have to respond to a notice to his attorney under CCP 1987(b) to appear at the trial as a witness." In context this provision is simply a waiver by petitioners of any right to rely on Ryan's invocation of the Fifth Amendment privilege as a ground for withholding the filing of a release and dismissal in Ryan's favor once he has testified at the trial. Nothing in the quoted language binds petitioners to forego efforts to overcome the basis for the privilege by obtaining an immunity order.

■ We turn to the question of whether the trial court was required to grant the immunity order requested by petitioners. Their right of discovery was limited to matters "not privileged." (Code Civ. Proc., § 2016, subd. (b); *Rudnick* v. *Superior Court, supra,* 11 Cal.3d 924, 929.) ■ However, it is now settled that a witness who refuses to

petitioners' discovery rights, we instead issue a writ of prohibition restraining the trial court from enforcing an order by which it directed petitioners to answer written interrogatories propounded by real parties in interest. Enforcement of the order was stayed pending final determination of this writ proceeding. Petitioners argue that they were entitled to this relief on the principle that discovery is a two-way street. However, the settlement between petitioners and real parties in interest eliminated the latters' standing to propound interrogatories (Code Civ. Proc., § 2030) and the determination of whether petitioners should answer the interrogatories, unlike disposition of their request for an immunity order, would not impinge upon prosecutorial interests. Hence we conclude we should permit our stay order to expire and dismiss as moot petitioners' request for relief from compulsion to answer interrogatories, without prejudice to further consideration of the issue should it again arise in this litigation.

The elimination of any possibility of a trial until after disposition of petitioners' appeal from the summary judgment makes it also unnecessary for us to consider the contention that the petition should be denied on the ground of laches in that the petition was filed at a time too long after the trial court's denial of the requested order and at too short a time before the date set for trial.

answer questions on the ground of the constitutional privilege against self-incrimination may nevertheless be compelled to answer if granted immunity against prosecutorial use of the answer or of evidence derived from the answer in a subsequent criminal proceeding against the witness. (*Kastigar* v. *United States, supra,* 406 U.S. 441; *Byers* v. *Justice Court* (1969) 71 Cal.2d 1039, 1050 [80 Cal.Rptr. 553, 458 P.2d 465].) Section 2019, subdivision (b)(1), of the Code of Civil Procedure provides that with respect to the taking of a deposition the court may make specified kinds of protective orders or "any other order which justice requires to protect the party or witness from annoyance, embarrassment or oppression."　█　Petitioners contend that the quoted provision empowered the trial court to order the immunity that would eliminate the privilege as a barrier to compelling testimony from the real parties in interest. Going further they assert that the trial court was *compelled* to make such an order by the rule that the discovery statutes (Code Civ. Proc., § 2016 et seq.) must be construed liberally in favor of disclosure in the absence of well established cause for denial. (See *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 377-378 [15 Cal.Rptr. 90, 364 P.2d 266].)

Petitioners rely principally upon *People* v. *Superior Court (Kaufman), supra,* 12 Cal.3d 421, where we directed the respondent court to grant an immunity order requested by the People for the purpose of obtaining deposition testimony from defendants in an action for civil penalties and equitable relief based on charges of deceptive advertising and unfair competition. In our opinion we rejected the contention that immunity cannot be granted unless expressly authorized by the Legislature. Holding that power to grant the immunity order was implied by section 2019, subdivision (b)(1), of the Code of Civil Procedure, we pointed out that *Byers* v. *Justice Court, supra,* 71 Cal.2d 1039, had already established the propriety of deriving the power from statutory implication rather than express provision. *Byers* held that the duty imposed by Vehicle Code section 20002, subdivision (a), upon the driver of an automobile involved in an accident resulting in property damage to leave his name and address was a violation of the privilege against self-incrimination, and that to avoid such violation in carrying out the purpose of the statute it would be construed as *implying* a grant to the driver of immunity from subsequent use of the required information in a criminal proceeding.[5] However, a premise of this statutory construction was our conclusion that

---

[5] In *California* v. *Byers* (1971) 402 U.S. 424 [29 L.Ed.2d 9, 91 S.Ct. 1535], our judgment was vacated on the ground that requiring the driver to leave his name and address did not invade the privilege.

"it will neither frustrate any apparent significant legislative purpose *nor unduly hamper criminal prosecutions of drivers* . . . ." (71 Cal.2d at p. 1054; italics added.) It was our view that the primary objective of the statute was to protect private parties having damage claims rather than to facilitate criminal prosecution, that the granting of immunity would remove a constitutional obstacle to the accomplishment of this objective, and that the Legislature would prefer to have the driver's name and address made known in compliance with the statute even at a possible "cost of some burden on prosecuting authorities in criminal cases." (71 Cal.2d at p. 1055.)

We do not find in the discovery statutes any legislative preference for imposing the burdens of use immunity upon prosecuting authorities whenever necessary to the obtaining of discovery *by private parties.* We concluded in *Kaufman* that "a grant of immunity with a proper protective order would not frustrate but would further the legislative purpose of *suppressing deceptive advertising.* Nor would it unduly hamper the prosecution of persons who, in the judgment of the authorities, should be subjected to criminal proceedings. [Citations.]" (12 Cal.3d at pp. 428-429; italics added; fn. omitted.) The legislation authorizing the underlying *Kaufman* action for suppressing deceptive advertising provided for the action's being brought in the name of the People by prosecuting officials.[6] Thus, the immunity granted in *Kaufman* sprang from a *prosecutorial* decision to implement the People's civil enforcement of the law even at the expense of burdens that the immunity order might impose on subsequent criminal proceedings. Moreover, in *Kaufman* the prosecuting attorneys representing the People retained complete control over the *scope* of immunity through the power to determine what questions would be put to the witnesses to whom the immunity was being granted. (See *In re Kilgo* (4th Cir. 1973) 484 F.2d 1215, 1219-1221.) ■ Use immunity does not extend to answers or statements which the witness does not in good faith understand to be responsive to a question asked. (See *Zicarelli* v. *New Jersey Investigation Comm'n* (1972) 406 U.S. 472, 476 [32 L.Ed.2d 234, 238-239, 92 S.Ct. 1670].)

---

[6]The civil action underlying *Kaufman* was brought under Business and Professions Code section 17536 and Civil Code section 3370.1. (12 Cal.3d at p. 431.) These statutes authorize prosecution of an action "in the name of the people of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney" (Bus. & Prof. Code, § 17536) or in the name of the People by the Attorney General or a district attorney, city attorney, or full-time city prosecutor (Civ. Code, § 3370.1).

■ The relief being asked by petitioners is a far cry from that required in *Kaufman.* They ask that without any notice to or expression from any prosecuting agency the trial court grant real parties in interest immunity from the direct or indirect use in criminal proceedings of their answers to whatever questions petitioners may see fit to pose on discovery that are "relevant to the subject matter"[7] of petitioners' alleged causes of action for damages. Petitioners argue that even though prosecuting authorities would have no voice in this grant of immunity, any resulting impairment of prosecutorial functions would not be sufficiently significant to offset petitioners' discovery rights. It is true that use and derivative use immunity, unlike transactional immunity, does not purport to interfere with any prosecution based on evidence which is not derived directly or indirectly from the immunized testimony. But the very existence of such testimony may present serious problems of *proving* its complete independence from evidence introduced in the criminal proceeding. (See, e.g., *United States* v. *Catalano* (2d Cir. 1974) 491 F.2d 268, 272; *United States* v. *McDaniel* (8th Cir. 1973) 482 F.2d 305, 311; *Symposium: The Granting of Witness Immunity* (1976) 67 J. Crim. L. 129, 134, 160.)

Petitioners argue that the trial court can eliminate these prosecutorial problems for practical purposes by "an adequately drawn protective order that seals the disclosed information from disclosure beyond the confines of the civil litigation or [by] other similar restrictions on the dissemination of the compelled testimony." But even if the protective order were effective in preventing pretrial dissemination of the contents of the depositions themselves it could not—without nullifying the very purpose of taking the depositions—prevent petitioners from developing further evidence as a result of the deposition testimony or prevent ultimate introduction of the depositions into evidence at the trial. Thus, even before petitioners' case went to trial a prosecutor might be faced with establishing that evidence being offered to prove the criminal guilt of a real party in interest had origins wholly independent of evidence developed by petitioners after taking that party's deposition under an immunity order. Moreover, after petitioners' case had been tried, a prosecutor might be required to establish such independence from much or all of the trial evidence including perhaps part or all of the deposition itself.

---

[7]Code of Civil Procedure, section 2016, subdivision (b); see *Pacific Tel. & Tel. Co.* v. *Superior Court, supra,* 2 Cal.3d 161, 171-173.

In view of these prosecutorial burdens engendered by the granting of use and derivative use immunity, amici curiae (see fn. 3, *ante*) urge us to hold that trial courts have no power to grant such immunity in aid of discovery by a private party in a civil action except at the *request* of a prosecuting agency. The denials by trial courts of *transactional* immunity orders sought by *defendants* in criminal proceedings for their own witnesses have been repeatedly sustained on the ground that Penal Code section 1324 permits transactional immunity orders only on the request of the district attorney.[8] (*People* v. *Pineda* (1973) 30 Cal.App.3d 860, 866-868 [106 Cal.Rptr. 743]; *People* v. *Traylor* (1972) 23 Cal.App.3d 323, 331-332 [100 Cal.Rptr. 116]; *In re Marshall K.* (1970) 14 Cal.App.3d 94, 99-100 [92 Cal.Rptr. 39]; *People* v. *Williams* (1970) 11 Cal.App.3d 1156, 1163-1164 [90 Cal.Rptr. 409].) Upholding the constitutionality of this statutory requirement of a prosecutorial request, we said in the case of *In re Weber* (1974) 11 Cal.3d 703, 720 [114 Cal.Rptr. 429, 523 P.2d 229]: "Making a grant of immunity subject to a request therefor by the district attorney of the county or the Attorney General does not invade judicial prerogatives, since the decision to seek immunity is an integral part of the *charging* process, and it is the prosecuting attorneys who are to decide what, if any, crime is to be charged. [Citation.]" █ As a corollary to this statement amici contend that *any* judicial grant of immunity in the absence of a prosecutor's request constitutes a *judicial* invasion of *executive* prerogatives in violation of the constitutional separation of powers (Const., art. III, § 3).

Apart from Penal Code section 1324, however, there are circumstances in which our judicial rules of decision confer use and derivative use immunity without any prosecutorial request and for other than prosecutorial purposes. Thus a defendant in a criminal case may enjoy such immunity for his testimony at a prior hearing in which his probation was sought to be revoked on grounds forming the basis of the criminal charge (*People* v. *Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024]) or for his statements made during a psychiatric examination to determine his mental fitness to stand trial (*Tarantino* v. *Superior Court* (1975) 48 Cal.App.3d 465 [122 Cal.Rptr. 61]). (See also *Byers* v. *Justice Court, supra,* 71 Cal.2d 1039, 1048-1057; but see fn. 5, *ante.*) It is therefore apparent that prosecutorial request is not a universal prerequisite to a judicial grant of immunity.

[8]From 1969 to 1975, Penal Code section 1324 also authorized the granting of transactional immunity orders at the request of the Attorney General. (See Stats. 1969, ch. 1357, p. 2744, as amended by Stats. 1971, ch. 1795, § 4, p. 3870.)

The protection of prosecutorial interests in the granting of use and derivative use immunity in aid of discovery by a private litigant lies not in any rigid requirement of a prosecutorial request for immunity but in the more general condition stated in *Kaufman* and *Byers* that the granting of immunity not "unduly hamper" subsequent criminal prosecutions. (See 12 Cal.3d at p. 429; 71 Cal.2d at p. 1054.) Subject to compliance with this condition and in light of the legislative policies promotive of civil discovery (see *Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 375-378) a civil litigant is entitled to the inclusion in a protective order under Code of Civil Procedure section 2019, subdivision (b)(1), of whatever use and derivative use immunity is required to eliminate unnecessary barriers to effectuation of the litigant's discovery rights.[9]

The mere absence of a request from a prosecuting official for the granting of immunity does not in itself establish that an immunity order would unduly hamper prosecution. For example, a district attorney may already have ascertained and considered the circumstances giving rise to a witness' legitimate fear of self-incrimination and have made a determination not to prosecute the witness.[10] Yet counsel seeking an

---

[9]Amicus argues that a protective order granting immunity to assist discovery by a private party is not an order "to protect the party or witness from annoyance, embarrassment, or oppression" and is therefore not authorized by section 2019, subdivision (b)(1) of the Code of Civil Procedure. The argument purports to distinguish *Kaufman* on the ground that although prosecutorial use of testimony compelled by the *People* pursuant to a grant of use immunity would indeed constitute "annoyance, embarrassment, or oppression," prosecutorial use of testimony compelled for the benefit of a *private party* would be perfectly legitimate and so could not be said to annoy, embarrass or oppress the witness. However, the restriction which an immunity order in aid of discovery imposes upon subsequent prosecutorial use of compelled testimony does not stem simply from a statutory power to protect the witness but is the quid pro quo constitutionally required as a condition to stripping the witness of the privilege against self-incrimination. (*Kastigar* v. *United States, supra,* 406 U.S. 441; *Byers* v. *Justice Court, supra,* 71 Cal.2d 1039, 1050.) The protective order approved in *Kaufman* was not for the benefit of the witness, who would have preferred to stand on the privilege (see 12 Cal.3d at p. 424), but was for the protection of the right of the party seeking the order (the People) to obtain discovery without being blocked by a claim of privilege that the protective order could effectively dispel. The *Kaufman* holding that such an order was proper in furtherance of the People's discovery rights applies with equal force to the propriety of such an order in furtherance of the discovery rights of private parties. The distinction between the two situations pertains only to fulfillment of the requirement that the immunity order not unduly hamper prosecution.

[10]In this connection the petition for the writ alleges: "The events complained of in Petitioners' action occurred during the early part of 1970. As appears from the portions of the transcript of Thurber's trial (Appendix, Exhibit 6) facts suggesting the possible involvement of the Real Party Defendants in the murder of Allen Daly have been part of the public record since at least the fall of 1970. Notwithstanding this, there are no current or pending criminal prosecutions arising out of these events."

immunity request from the district attorney may be unsuccessful not because of any expectation that immunity would hamper prosecution but simply because the consideration of such matters pertaining solely to private. litigation is not one. of the official duties to which busy prosecuting attorneys feel constrained to devote their attention. We therefore conclude that the absence of any unduly detrimental effect of a proposed immunity order upon future criminal proceedings to be brought by a prosecuting official against the witness can be sufficiently established by that official's *failure to object* to the granting of the order after being given adequate notice and opportunity to do so.[11]

■ To enable the prosecuting agency to make an informed judgment on whether to object to the proposed immunity order, the notice must state the subject matter of the inquiries to which the witness' answers are to be immunized from use or derivative use. This statement must be in a form that when incorporated into the immunity order will provide the witness with a clear guide to what questions are within and what are without the immunity grant. To preclude the possibility of unnecessary or automatic objections, the trial court may disregard objections that are not accompanied by the declaration of the prosecuting attorney making the objection that he is familiar with the notice and has reasonable grounds to believe that the proposed grant of immunity *might* unduly hamper the prosecution of a criminal proceeding.[12]

■ The trial court must treat such an objection and declaration as conclusively establishing that an immunity order as described in the notice cannot be issued because it would or might unduly hamper criminal prosecution of the witness. The court cannot require the objecting prosecutor to amplify or justify the submitted declaration nor undertake to assess the nature or degree of the impact the immunity grant would have upon prosecutorial functions. To do so would improperly interfere with the prosecutor's free exercise of discretion to determine what if any criminal charges should be brought against particular individuals. (See *People* v. *Smith* (1975) 53 Cal.App.3d 655, 658-660 [126 Cal.Rptr. 195]; *People* v. *Adams* (1974) 43 Cal.App.3d 697, 707-708 [117 Cal.Rptr. 905]; *Williams* v. *Superior Court* (1973) 30

[11]To be adequate the notice must be given far enough in advance of the deadline for objecting to provide the prosecuting official with reasonable time.not only for preparing and transmitting an objection but also for making any necessary inquiries of police or other law enforcement agencies concerning possible grounds for instituting a criminal proceeding against the witness.

[12]The criminal proceeding referred to in the declaration can be either one already under way or one that will or may be brought in the future.

Cal.App.3d 8, 12 [106 Cal.Rptr. 89]; *People* v. *Municipal Court* (1972) 27 Cal.App.3d 193, 203-204 [103 Cal.Rptr. 645, 66 A.L.R.3d 717].) If the litigant seeking the immunity order considers the prosecutor's objection unjustified, the litigant's remedy is to attempt to persuade the prosecutor to withdraw the objection. It may also be possible to eliminate the basis for the objection by reframing the scope of the proposed immunity order or by postponing the examination of the witness.[13]

The criminal prosecutions which an immunity order in aid of a private litigant's civil discovery must not "unduly hamper" may extend beyond those instituted by the local district attorney. In the present case, for example, real parties in interest claim possible incrimination under federal as well as state law. It would often be impracticable to require that notice of a proposed immunity grant be given to every prosecuting agency that might conceivably have jurisdiction to prosecute the witness on charges related to the subject matter of the immunity grant. Word of the immunity proposal can be conveyed to the prosecutors most likely to be interested by the not unduly cumbersome procedure of giving notice to the district attorney of the county, the California Attorney General, and the United States Attorney for the district in which the county is located. The trial court in its discretion may further require notice to be given to one or more other prosecuting officials, such as a city attorney or a prosecutor in another state, whom the court concludes from the circumstances before it may have grounds for objecting to the immunity grant. The interests of the prosecuting agencies of other California counties will ordinarily be protected by the notice given to the Attorney General in view of that officer's responsibilities for uniform and adequate enforcement of the state laws and for supervision of the county district attorneys (see Const., art. V, § 13; Gov. Code, § 12550).[14]

---

[13]Postponement may also eliminate the witness' grounds for claiming the privilege if, for example, prosecution becomes barred by intervening proceedings or by the running of the statute of limitations. (See *Ex parte Cohen* (1894 104 Cal. 524, 528 [38 P. 364]; Witkin, Cal. Evidence (2d ed. 1966) § 926.)

[14]These sections of the Constitution and the Government Code do not provide for supervision by the Attorney General over city attorneys or city prosecutors (see 20 Ops. Cal.Atty.Gen. 234, 236 (1952)) even though the latter often have prosecutorial responsibilities (see Gov. Code, §§ 41803.5, 71099, 72193; *People* v. *Rhodes* (1974) 12 Cal.3d 180 [115 Cal.Rptr. 235, 524 P.2d 363]; *Montgomery* v. *Superior Court* (1975) 46 Cal.App.3d 657, 666 [121 Cal.Rptr. 44]; *City of Merced* v. *County of Merced* (1966) 240 Cal.App.2d 763 [50 Cal.Rptr. 287]; *Oppenheimer* v. *Tamblyn* (1959) 167 Cal.App.2d 158, 162 [334 P.2d 152]). However, it can fairly be anticipated that the district attorney or the Attorney General will forward to the appropriate city prosecutor the notice of any proposed immunity order that they think would unduly hamper that prosecutor's conduct of a criminal proceeding against the witness. In any event, the trial court can

 Notice given to the United States Attorney will serve to satisfy the federal prosecutorial interests arising out of the right given witnesses by the Fifth and Fourteenth Amendments to the United States Constitution to decline to give testimony in *state* proceedings that might tend to incriminate the witness under *federal* law. In affirming this right in *Murphy* v. *Waterfront Comm'n* (1964) 378 U.S. 52 [12 L.Ed.2d 678, 84 S.Ct. 1594], the Supreme Court held that a witness granted immunity from state prosecution to compel his testimony in a state criminal investigation could nevertheless refuse to answer on grounds of self-incrimination unless protected against any use of the compelled testimony or its fruits by federal officials in a criminal proceeding against the witness. The court further concluded, however, that "in order to implement this constitutional rule and accommodate the interests of the State and Federal Governments in investigating and prosecuting crime, the Federal Government must be prohibited from making any such use of compelled testimony and its fruits." (378 U.S. at p. 79 [12 L.Ed.2d at p. 695].) These principles prevent a witness who is ordered to testify in a criminal proceeding under an order granting transactional immunity (Pen. Code, § 1324) from avoiding compliance with the order by claiming that the testimony would tend to incriminate him under federal law. (*People* v. *Superior Court (Taylor)* (1975) 53 Cal.App.3d 996, 1002 [126 Cal.Rptr. 297]; *Nelson* v. *Municipal Court* (1972) 28 Cal.App.3d 889 [105 Cal.Rptr. 46].)

The present case differs from *Murphy* in that the purpose of the proposed immunity order is not to investigate or prosecute crime but to obtain evidence for a private civil action. But we are confident that the principle of accommodation between state and federal interests referred to in *Murphy* extends to the granting of use and derivative use immunity in the situation before us under the conditions already stated. If accommodation to state governmental interests in prosecuting crime is sufficient to subject federal prosecutors to the burden of use immunity conferred without prior notice or consultation, surely accommodation to the state's interest in the orderly resolution of civil disputes justifies the far lesser burden of use immunity granted only after the federal prosecutor as well as state prosecuting officials have been given adequate notice and opportunity to interpose a conclusive objection. (See *City of New York* v. *Marchese* (1973) 74 Misc.2d 367 [343 N.Y.S.2d 547].)

---

exercise its previously described discretion to require that notice be sent to one or more designated prosecuting officials.

We conclude that if in the future course of the underlying litigation petitioners are again blocked in obtaining discovery from real parties in interest by the latters' claims of the privilege against self-incrimination, petitioners will be entitled to a protective order granting real parties in interest use and derivative use immunity after the conditions herein stated have been met. As no discovery proceedings are now pending the alternative writ is discharged and the petition is dismissed.

Tobriner, Acting C. J., Mosk, J., Clark, J., Richardson, J., and Sullivan, J.,† concurred.

---

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.