[Civ. No. 52742. Second Dist., Div. Three. July 27, 1978.]

JACK M. DeCAMP, Plaintiff and Respondent, v.
FIRST KENSINGTON CORPORATION et al.,
Defendants and Appellants.

COUNSEL

Stephen R. Landau for Defendants and Appellants.

Kaplan, Livingston, Goodwin, Berkowitz & Selvin, Peter C. Smoot and Dorothy Wolpert for Plaintiff and Respondent.

OPINION

POTTER, Acting P. J.—Defendants First Kensington Corporation (hereinafter Kensington) and Barry S. Marlin (hereinafter Marlin) appeal from the judgment of the superior court awarding plaintiff Jack M. DeCamp compensatory and punitive damages totaling $72,525 on plaintiff's complaint for money had and received and fraud. The cause was heard as an uncontested matter after the default of defendants was taken as a result of defendants' failure to file a verified answer to the verified complaint.

The complaint alleged that defendants had jointly induced plaintiff to turn over $35,000 to Kensington. The misrepresentation charged was that the money would be invested in fixed deposits in banks in the United Kingdom where a high rate of interest would be received, whereas in fact no such deposits were ever intended or made and defendants simply converted the funds to their own use.

Defendants' demurrers to the complaint were overruled and, on September 20, 1976, defendants filed an answer comprising simply a general denial signed by defendants' counsel. The lack of verification was explained as follows:

"COMES NOW Defendants, BARRY S. MARLIN and FIRST KENSINGTON CORPORATION, a California corporation, and in answer to Plaintiff's Complaint on file herein, submits the following unverified answer by reason of the fact that to require these answering Defendants to file a verified answer to portions of Plaintiff's Complaint could and would violate these answering Defendants' rights afforded under the Fifth and Fourteenth Amendments of the United States Constitution."

On February 4, 1977, plaintiff filed a motion to strike this answer or, alternatively, for judgment on the pleadings or summary judgment on the

ground that the answer failed to comply with the requirements of sections 431.30 and 446 of the Code of Civil Procedure and, therefore, constituted an admission of the allegations of the complaint and was insufficient to create any issue of fact.

The hearing on the motion, originally set for February 15, 1977, was continued to March 7, 1977, at which time oral argument was heard. An additional continuance to April 1, 1977, was granted "to afford defendants one last opportunity to verify answer to the verified complaint." On April 1, defendants lodged with the court separate answers on behalf of Kensington and Marlin, each of which was verified by defendants' counsel. The verification in behalf of Kensington stated that counsel's office was in Los Angeles County and that "no officers of said Defendant are able to make the verification because they are absent from said county . . . ." The verification in behalf of Marlin stated that "said Defendant is unable to make the verification because he is absent from said county . . . ." In view of the fact that no prior notice was given that such answers were to be filed, the court further continued the hearing. The minute order noted the following:

"Counsel for defendants has informed the Court that the defendant Barry Marlin left Los Angeles on March 22, 1977 and is expected to return this coming week. He resides in Los Angeles and most of this temporary absence will be spent in New York City.

"Both first amended answers are lodged with the Court, but are ordered not to be filed at this time."

The hearing was further continued to May 3, 1977. On April 19, plaintiff filed a supplemental memorandum characterizing the answers lodged on April 1 as "a transparent attempt to circumvent this Court's order of March 7, 1977, and to violate the spirit of the law requiring a party to verify an answer to a verified Complaint." (Emphasis in original.) After hearing on May 3, 1977, the court granted plaintiff's motion to strike the unverified answer and the court entered the default of defendants.

In the course of the oral proceedings on May 3, counsel for defendants also disclosed that Marlin "is no longer a resident of the State of California" and that he moved to the State of New York "approximately two weeks ago." The court responded: "[T]hat isn't going to correct his defalcations of the past several months."

Plaintiff has requested that this court take judicial notice of the guilty plea entered in Marlin's behalf to six counts of a federal indictment filed July 27, 1977, in the United States District Court for the Central District of California. Defendants have not objected to judicial notice being taken of the indictment and plea pursuant to California Evidence Code section 452, subdivision (d). The indictment contains 24 counts. Marlin pleaded guilty to six counts. These six counts related to four different schemes, each of which is described in the indictment as a "scheme and artifice to defraud and obtain money by means of false and fraudulent pretenses." One of the described schemes was closely parallel to that described in plaintiff's complaint herein and employed the same bank account maintained by Kensington which was employed in obtaining the money from plaintiff. Three of the counts to which Marlin pleaded guilty alleged use of the mails to implement this scheme. None of the counts, however, to which Marlin pleaded guilty involved plaintiff as a victim.

### Contentions

Defendants contend that (1) Marlin's guilty pleas do not render the present proceedings moot, (2) their answers verified by the attorney during Marlin's absence from the State of California were sufficient, (3) they were not required to file verified answers which might tend to incriminate them, and (4) on finding their answers insufficient, the court was required to give them a reasonable period of time within which to file amended answers. Plaintiff controverts all of these contentions.

### Discussion

SUMMARY

The guilty pleas of defendant Marlin do not moot the questions presented in this proceeding.

The purported verification of answers by defendants' counsel was not sufficient, and the court properly declined to file them.

Code of Civil Procedure section 446 requires the answer to be verified despite the fact that "an admission of the truth of the complaint might subject the party to a criminal prosecution . . . ." To sustain the constitutionality of this requirement, we must construe it as implying a grant (to any answering defendant entitled to protection against self-incrimination) of immunity from use of the answer or evidence derived

therefrom in any subsequent criminal prosecution. So construed, the section validly required both defendants to file verified answers. Defendant Kensington has no Fifth Amendment rights and defendant Marlin is adequately protected by the implied use and derivative use immunity. The judgment must, therefore, be affirmed as to defendant Kensington. Defendant Marlin, however, is entitled to an opportunity to file a verified answer after the decision of this court establishing his right to use immunity becomes final.

### Marlin's Guilty Pleas Do Not Render This Proceeding Moot

Plaintiff claims that Marlin has waived his Fifth Amendment rights by pleading guilty to federal mail fraud charges, asserting that defendant "has pled guilty to the very acts alleged in the complaint and thereby waived his Fifth Amendment rights." The record does not support such assertion. At most, Marlin's guilty pleas admit the existence of a scheme to obtain money by false pretenses which employed some of the same instrumentalities that were involved in plaintiff's complaint, and that such scheme was practiced against the victims named in the federal indictment. Plaintiff is not so named. Consequently, the guilty pleas do not admit that any such scheme was utilized to obtain money from plaintiff. Marlin's conviction upon his plea of fraud on the victims described in the indictment would not foreclose his subsequent prosecution for like conduct in respect of plaintiff. Consequently, an admission of the allegations of plaintiff's complaint, without effective immunity protecting him from its use, would expose Marlin to a serious threat of prosecution in both the federal and state courts. We conclude, therefore, that Marlin is still in need of protection from self-incrimination, and the issues presented by his appeal are not mooted by his guilty pleas.

### The Attorney Verification Was Not Sufficient

The attorney verifications were allegedly made upon the statutory ground "that the parties are absent from the county where he has his office, or from some other cause are unable to verify it . . . ." (Code Civ. Proc., § 446.) The affidavit in this connection stated "that said Defendant [Marlin] is unable to make the verification because he is absent from said county." The facts made known to the trial court, however, demonstrated the falsity of this claim. The hearing on the motion to strike the unverified answer had been continued from March 7 to April 1,

specifically "to afford defendants one last opportunity to verify answer to the verified complaint." The minutes of the court reflect the fact that Marlin left Los Angeles on March 22, 1977. Patently, his absence from the county did not render him "unable to make the verification." The further fact that Marlin was again in Los Angeles during the interval between April 1 and May 3, and moved to New York approximately two weeks before the latter date, without verifying the answers (which the court had only allowed to be lodged) compels the conclusion that his absence was contrived in order to circumvent the court's requirement for verification. We have no hesitancy in holding that the trial court was justified in concluding there was no inability on Marlin's part to make the verification.

As our Supreme Court said in *Silcox* v. *Lang* (1889) 78 Cal. 118, 122 [20 P. 297]: "The practice of attorneys verifying for their clients should be discouraged, and to that end the provisions of the code referred to should receive a strict construction." Applying such rule of construction, Code of Civil Procedure section 446 does not authorize attorney verifications where the absence of the party creates no inability on his part to verify.

" 'The object of the verification is to insure good faith in the averments of the party.' " (*Bittleston Law etc. Agency* v. *Howard* (1916) 172 Cal. 357, 360 [156 P. 515].) The bad faith of the defendants in attempting to utilize an attorney verification under the circumstances of this case is patent. To sanction a transparent circumvention of the purpose of verification would totally negate the effect of the requirement, and we must decline to do so.

*The Answers Were Required to Be Verified*
*Despite the Fact That the Admission of the*
*Truth of the Complaint Would Show Marlin*
*to Be Guilty of Crime*

Code of Civil Procedure section 446 requires that the answers be verified.

As originally enacted, Code of Civil Procedure section 446 recognized the right of a defendant to avoid verification of his answer in all cases where the "admission of the truth of the complaint might subject the party to a criminal prosecution . . . ." It provided in a single sentence: "Every pleading must be subscribed by the party or his attorney; and when the complaint is verified, or when the State, or any officer of the State, in his official capacity, is plaintiff, the answer must be verified,

*unless an admission of the truth of the complaint might subject the party to a criminal prosecution,* or unless an officer of the State, in his official capacity, is defendant." (Italics added.)

However, a 1933 amendment limited the self-incrimination exception so as to make it apply only to cases in which the state or an officer thereof was plaintiff. The present form of the statute adds actions by counties, cities and school districts and their respective officers. The requirement for verification of answers where the complaint is verified has been made a separate provision and is not subject to such exception. The language of the section effective at the date of defendants' answer was as follows: "When the state, any county thereof, city, school district, district, public agency, or public corporation, or any officer of the state, or of any county thereof, city, school district, district, public agency, or public corporation, in his official capacity, is plaintiff, the answer shall be verified, *unless an admission of the truth of the complaint might subject the party to a criminal prosecution,* or, unless a county thereof, city, school district, district, public agency, or public corporation, or an officer of the state, or of any county, city, school district, district, public agency, or public corporation, in his official capacity, is defendant. Except in justice courts, *when the complaint is verified, the answer shall be verified.*" (Italics added.)

The 1933 amendment clearly evidenced the Legislature's intent that in private litigation the defendant is not entitled to defend a verified complaint unless he can deny its essential allegations under penalty of perjury. Decisions prior to this amendment had made it clear that filing an unverified answer to a verified complaint constituted an admission of all its allegations. (*Hearst* v. *Hart* (1900) 128 Cal. 327, 328 [60 P. 846].) The conclusion is, therefore, inescapable that the Legislature intended that the defendant either verify his answer or forfeit his property by incurring an adverse judgment, regardless of whether an admission of the truth of the complaint might subject him to criminal prosecution.

In *United States* v. *Kordel* (1970) 397 U.S. 1, 13 [25 L.Ed.2d 1, 11, 90 S.Ct. 763], the United States Supreme Court said: "The Court of Appeals was correct in stating that 'the Government may not use evidence against a defendant in a criminal case which has been coerced from him under penalty of either giving the evidence or suffering a forfeiture of his property.' [Fn. omitted.]" In so stating, the Supreme Court was applying the rule adopted in *Murphy* v. *Waterfront Comm'n* (1964) 378 U.S. 52 [12 L.Ed.2d 678, 84 S.Ct. 1594]. In *Murphy,* the court overruled contrary decisions and held "that the constitutional privilege against self-

incrimination protects the state witness against incrimination under federal as well as state law and a federal witness against incrimination under state as well as federal law." (*Id.,* at pp. 77-78 [12 L.Ed.2d at p. 694].) The court, however, implemented this rule, not by prohibiting compulsion to give the testimony in the first place but rather by imposing a use and derivative use immunity applicable to subsequent criminal prosecution.

In *Byers* v. *Justice Court* (1969) 71 Cal.2d 1039 [80 Cal.Rptr. 553, 458 P.2d 465], our Supreme Court construed *Murphy* as authorizing it to preserve the constitutionality of statutory disclosure requirements by implying the grant of a use immunity. On this basis, a California "hit-and-run" statute, requiring a driver involved in an accident causing property damage to stop and identify himself as the driver of an involved vehicle, was held constitutional. The court was satisfied that the privilege against self-incrimination was applicable. It upheld the statute, however, on the basis (*id.,* at p. 1049): "(1) that the state may require a person to disclose information otherwise subject to a claim of privilege if in place of the protection conferred by the privilege there is substituted another protection, having the same scope and effect as the privilege, namely, immunity from use of the information or its fruits in connection with a criminal prosecution against the person; and (2) that, when consistent with both legislative intent and effective enforcement of the criminal laws, a court may hold that such immunity exists, and therefore that disclosure is required, despite the absence of any specific legislative grant of immunity."

The court further said (*id.,* at p. 1050):

"Accordingly, if the disclosures compelled by section 20002 of the Vehicle Code and the fruits of such disclosures may not be used in a criminal prosecution relating to the accident, the requirements of the privilege against self-incrimination are met. There is no statute explicitly providing for evidentiary use restrictions for persons complying with section 20002, subdivision (a), in cases where such persons would otherwise have a valid claim of privilege. Therefore, we must consider whether such restrictions may properly be imposed by this court.

"There is precedent for judicial imposition of appropriate restrictions on the use of statements in order to compel otherwise privileged testimony."

The court then analyzed factors pertinent to "an assessment of probable legislative intent, that the Legislature would prefer to have the provisions of section 20002 of the Vehicle Code upheld even in cases involving possible criminal misconduct at the cost of some burden on prosecuting authorities in criminal cases arising out of or related to an accident covered by that section rather than avoid that burden at the cost of significantly frustrating the important noncriminal objective of the legislation." (*Id.,* at p. 1055.) Elements of this assessment included the fact that the legislation "was concerned only with protecting the interests of private parties . . ." (*id.,* at p. 1054) and ". . . that criminal prosecutions of drivers involved in accidents will not be unduly hampered by rules that prosecuting authorities may not use information divulged as a result of compliance with section 20002, subdivision (a), of the Vehicle Code or the fruits of such information and that in prosecutions of individuals who have complied with that section the state must establish that its evidence is not the fruit of such information." (*Id.,* at p. 1056.)

A similar assessment with respect to Code of Civil Procedure section 446 results in the same conclusion. ■ Like Vehicle Code section 20002, section 446 of the Code of Civil Procedure is concerned only with protecting the interests of private parties by relieving them of the unreasonable burden of undergoing a full-scale trial to prove verified allegations which the defendant is unwilling to deny under penalty of perjury.

■ The hampering effect (upon criminal prosecutions) of an implied use immunity attached to Code of Civil Procedure section 446 will be virtually nil and far less than that inherent in such a use immunity attached to Vehicle Code section 20002. A driver's stopping and identifying himself as the driver of a vehicle involved in an accident might well be the connecting link leading to most of the prosecution's evidence. Consequently, the prosecution's burden to ". . . establish that its evidence is not the fruit of such information" (71 Cal.2d at p. 1056) could be considerable. But it is difficult to conceive how a verified answer can lead to the discovery of evidence in a subsequent prosecution of a defendant. Answers do not require a statement of evidentiary facts. "It is the general rule that a pleading must allege the ultimate facts that constitute the cause of action or the defense, not the evidence by which the ultimate facts will be proved at the trial. [Fn. omitted.]" (39 Cal.Jur.2d, Pleading, § 21, p. 32.) Nor will any admission in the answer operate to disclose the defendant's connection with the offense charged in

the complaint; such connection is already fully disclosed by the complaint.

It is thus apparent that the prosecution will not be substantially hampered by use and derivative use immunity. The People will not be able to utilize any admission in the answer as evidence, but this will simply leave the situation where it was before defendant was forced to make the incriminating statement; and the People's "burden of showing that evidence used in a prosecution is untainted . . ." (71 Cal.2d at pp. 1052-1053) can easily be met.

In view of this fact, there really ". . . is no problem of conflicting state and federal interests" (*id.,* at p. 1055), even though obtaining money by false pretenses is a federal crime if the United States Postal Service is utilized.

We, therefore, conclude that the correct assessment of probable legislative intent is that the Legislature would prefer to have the important interests of private litigants protected at the cost of a minimal burden on prosecuting authorities.

The rule stated in *Byers* is still viable despite the fact that the United States Supreme Court vacated the judgment in *California* v. *Byers* (1971) 402 U.S. 424 [29 L.Ed.2d 9, 91 S.Ct. 1535]. The plurality opinion of the United States Supreme Court avoided the necessity of considering an implied immunity by holding that the hit-and-run statute did not require incrimination proscribed by the Fifth Amendment. Both dissenting opinions, in which a total of four justices concurred, held that the "hit-and-run" disclosure did require such self-incrimination and that an implied immunity was therefore necessary.[1]

Our Supreme Court apparently still considers that *Byers* is a correct statement of the law. In *Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 143 [137 Cal.Rptr. 14, 560 P.2d 1193], *Byers* is cited and quoted with a reference to the United States Supreme Court decision in a footnote as follows: "[5]In *California* v. *Byers* (1971) 402 U.S. 424 [29 L.Ed.2d 9, 91 S.Ct. 1535], our judgment was vacated on the ground that requiring the driver to leave his name and address did not invade the privilege."

---

[1]The dissenting opinion of Justice Black agreed with the Supreme Court of California that a use immunity was adequate. Justice Brennan's dissent stated the view that only a transactional immunity would suffice.

It would therefore appear that our Supreme Court agrees with the views stated in *Tarantino* v. *Superior Court* (1975) 48 Cal.App.3d 465, 470 [122 Cal.Rptr. 61]. In justifying a judicially declared immunity, the *Tarantino* court said (*ibid.*): "Such a declaration has express judicial sanction (*Byers* v. *Justice Court,* 71 Cal.2d 1039, 1043 [80 Cal.Rptr. 553, 458 P.2d 465]). That judgment was vacated by the United States Supreme Court (*California* v. *Byers,* 402 U.S. 424 [29 L.Ed.2d 9, 91 S.Ct. 1535]), but solely on the ground that self-identification of a driver, required by the hit-run statute, does not compel incrimination. The high court did not disagree with California's judicial declaration of immunity, nor could it, in light of its own decisions cited in the California *Byers* opinion (71 Cal.2d at pp. 1049-1053.) Thus we have no hesitancy in declaring that neither the statements of petitioner to the psychiatrists appointed under section 1369 nor the fruits of such statements may be used in trial of the issue of petitioner's guilt, under either the plea of not guilty or that of not guilty by reason of insanity. This immunity will be extended by the federal courts to use of such testimony or its fruits in any possible federal prosecution. (*Murphy* v. *Waterfront Comm'n,* 378 U.S. 52, 79 [12 L.Ed.2d 678, 695, 84 S.Ct. 1594], summarized in *Byers,* 71 Cal.2d at p. 1053.)"

We conclude from the foregoing that defendant Marlin was required to verify his answer but that in view of the fact that such answer was " 'coerced from him under penalty of either giving the evidence or suffering a forfeiture of his property' " (*United States* v. *Kordel, supra,* 397 U.S. at p. 13 [25 L.Ed.2d at p. 11]), he was entitled to an immunity against its use in any criminal prosecution.

■ The above conclusions, however, do not apply to defendant Kensington. Kensington had no privilege against self-incrimination and it could not secure the benefits of such privilege by designating an agent to verify its answer who could not do so without fear of self-incrimination.

In *United States* v. *Kordel, supra,* 397 U.S. 1, defendant Feldten had answered interrogatories in behalf of a corporate party of which he was vice president, in a civil product-seizure proceeding brought by the Federal Drug Administration. At the time the interrogatories were asked, the Federal Drug Administration had already served notice that it contemplated criminal proceedings against the corporation and Feldten. In the subsequent prosecution, Feldten claimed immunity. Holding that Feldten had not acquired immunity since he had not asserted his privilege, the court said (*id.,* at pp. 7-8 [25 L.Ed.2d at pp. 7-8]):

"The Court of Appeals thought the answers to the interrogatories were involuntarily given. The District Judge's order denying the corporation's motion to defer the answers to the interrogatories, reasoned the court, left the respondents with three choices: they could have refused to answer, thereby forfeiting the corporation's property that was the subject of the libel; they could have given false answers to the interrogatories, thereby subjecting themselves to the risk of a prosecution for perjury; or they could have done just what they did—disclose the requested information, thereby supplying the Government with evidence and leads helpful in securing their indictment and conviction.[7]

"In this analysis we think the Court of Appeals erred. For Feldten need not have answered the interrogatories. Without question he could have invoked his Fifth Amendment privilege against compulsory self-incrimination.[8] Surely Feldten was not barred from asserting his privilege simply[9] because the corporation had no privilege of its own,[9] or because the proceeding in which the Government sought information was civil rather than criminal in character.[10]

"To be sure, service of the interrogatories obliged the corporation to 'appoint an agent who could, without fear of self-incrimination, furnish such requested information as was available to the corporation.'[11] The corporation could not satisfy its obligation under Rule 33 simply by

"[7][*United States* v. *Detroit Vital Foods, Inc.* (6th Cir. 1969) 407 F.2d 570], 573.

"[8]*Wilson* v. *United States,* 221 U.S. 361, 377, 385; *Boyd* v. *United States,* 116 U.S. 616, 633-635; cf. *United States* v. *42 Jars . . . 'Bee Royale Capsules,'* 162 F.Supp. 944, 946, aff'd, 264 F.2d 666.

"[9]*Curcio* v. *United States,* 354 U.S. 118, 124; *Wilson* v. *United States, supra,* at 385; *United States* v. *3963 Bottles. . . of. . . 'Enerjol Double Strength,'* 265 F.2d 332, 335-336, cert. denied, 360 U.S. 931; *United States* v. *30 Individually Cartoned Jars . . . 'Ahead Hair Restorer . . . ,'* 43 F.R.D. 181, 187; cf. *Shapiro* v. *United States,* 335 U.S. 1, 27. That the corporation has no privilege is of course long established, and not disputed here. See *George Campbell Painting Corp.* v. *Reid,* 392 U.S. 286, 288-289; *Oklahoma Press Pub. Co.* v. *Walling,* 327 U.S. 186, 196, 208, 209-210; *United States* v. *Bausch & Lomb Optical Co.,* 321 U.S. 707, 726-727; *Essgee Co.* v. *United States,* 262 U.S. 151, 155-156; *Wheeler* v. *United States,* 226 U.S. 478, 489-490; *Baltimore & Ohio R. Co.* v. *ICC,* 221 U.S. 612, 622-623; *Hale* v. *Henkel,* 201 U.S. 43, 74-75; cf. *Curcio* v. *United States, supra*; *United States* v. *White,* 322 U.S. 694, 698, 705.

"[10]*Gardner* v. *Broderick,* 392 U.S. 273, 276; *McCarthy* v. *Arndstein,* 266 U.S. 34, 40; *Counselman* v. *Hitchcock,* 142 U.S. 547, 562, 563-564; *Boyd* v. *United States, supra*; *United States* v. *Saline Bank,* 1 Pet. 100, 104; 8 J. Wigmore, Evidence § 2257, pp. 339-340 (McNaughton rev. 1961); C. McCormick, Evidence § 123, p. 259 (1954).

"[11]*United States* v. *3963 Bottles. . . of. . . 'Enerjol Double Strength,' supra,* at 336; cf. *United States* v. *48 Jars . . . 'Tranquilease,'* 23 F.R.D. 192, 195, 196; 2A W. Barron & A. Holtzoff, Federal Practice and Procedure § 651, p. 101 (Wright ed. 1961).

pointing to an agent about to invoke his constitutional privilege. 'It would indeed be incongruous to permit a corporation to select an individual to verify the corporation's answers, who because *he* fears self-incrimination may thus secure for the corporation the benefits of a privilege it does not have.'[12] Such a result would effectively permit the corporation to assert on its own behalf the personal privilege of its individual agents.[13]"

The same may be said of Kensington. It had no privilege of its own and had no standing to assert in its own behalf the personal privilege of Marlin; consequently, no immunity could arise from its conduct with respect to the answer. Like the corporate defendant in *Kordel,* it was obliged to appoint an agent " 'who could, without fear of self-incrimination . . .' " (*id.,* at p. 8 [25 L.Ed.2d at p. 8]) make the required verification of the answer.

### Marlin Is Entitled to an Opportunity to File a Verified Answer; Kensington Is Not

■ Both defendants contend that the court erred in failing to allow them an opportunity to amend by filing a verified answer after the ruling striking the unverified answer. Defendants rely in this respect upon the rule stated in 4 Witkin, California Procedure (2d ed. 1971) Proceedings Without Trial, section 170, page 2823, as follows: "[W]here no demurrer was interposed it is error to grant the motion for judgment on the pleadings without giving the adverse party the same opportunity to amend that he would have had after the normal ruling on demurrer."

There would be merit to this contention if the effect of the court's order was a judgment on the pleadings based upon the substantive insufficiency of the allegations of the answer to constitute a defense, but such was not the basis of the court's ruling. The answers were stricken and the defendants' defaults were entered because the unverified answers constituted an admission of all of the material allegations of the complaint. An order granting a motion for judgment on the pleadings is appropriate under such circumstances, but its effect is the same as granting a motion to strike. It in no respect is equivalent to sustaining a demurrer.

---

"[12]*United States* v. *3963 Bottles . . . of . . . 'Enerjol Double Strength,' supra,* at 336.

"[13]Cf. *George Campbell Painting Corp.* v. *Reid, supra,* at 289; *Hale* v. *Henkel, supra,* at 69-70."

In *Hearst* v. *Hart, supra,* 128 Cal. 327, defendant filed an unverified answer; a judgment on the pleadings, without any opportunity to amend having been given, was affirmed. The court said (*id.,* at p. 328):

"2. It is further contended that the proper course under such circumstances would have been to move to strike the answer from the files, and then take judgment as for want of an answer.

"Either course may be pursued. In *McCullough* v. *Clark,* 41 Cal. 298, it is said: 'If the answer of the defendant was not properly verified, the plaintiff should have moved in the court below either to strike out the answer, or for judgment as for want of an answer.'

"It would seem to be immaterial to a defendant whether a judgment be rendered against him upon an answer, which, under the code, admits all the allegations of the complaint, or whether it be rendered upon default for want of an answer, which admits the same thing."

There is, therefore, no merit to defendants' contention.

However, there is another basis upon which Marlin is entitled to an opportunity to file a verified answer. At the time Marlin filed his unverified answer, he had a reasonable fear that a verified answer might be used against him in subsequent criminal proceedings. No prior decision of an appellate court in this state had recognized the existence of an implied use immunity based upon the coercive effect of Code of Civil Procedure section 446. Under such circumstances, it would be unreasonable to subject Marlin to a forfeiture of his property (by upholding his default) which he could only avoid by taking the risk that immunity might not attach.

Under like circumstances in *Murphy* v. *Waterfront Comm'n, supra,* 378 U.S. 52, a judgment of contempt was vacated. The court said (*id.,* at pp. 79-80 [12 L.Ed.2d at pp. 695-696]): "It follows that petitioners here may now be compelled to answer the questions propounded to them. At the time they refused to answer, however, petitioners had a reasonable fear, based on this Court's decision in *Feldman* v. *United States* [322 U.S. 487 (88 L.Ed. 1408, 64 S.Ct. 1082, 154 A.L.R. 982)], *supra,* that the federal authorities might use the answers against them in connection with a federal prosecution. We now have overruled *Feldman* and held that the Federal Government may make no such use of the answers. Fairness dictates that petitioners should now be afforded an

opportunity, in light of this development, to answer the questions. Cf. *Raley* v. *Ohio,* 360 U.S. 423. Accordingly, the judgment of the New Jersey courts ordering petitioners to answer the questions may remain undisturbed. But the judgment of contempt is vacated and the cause remanded to the New Jersey Supreme Court for proceedings not inconsistent with this opinion."

Our Supreme Court made a similar accommodation in *Byers* v. *Justice Court, supra,* 71 Cal.2d at pages 1057-1058, where the court said:

"However, it does not follow that the judgment must be reversed; we must determine whether, in light of the fact that we here announce a doctrine new to this state's jurisprudence, fairness dictates that Byers not be punished for his failure to comply with section 20002.

". . . . . . . . . . . . . . . . . . .

"We conclude, on the basis of *Murphy* v. *Waterfront Com., supra,* that it would be unfair to hold that although Byers correctly asserted that the Fifth Amendment privilege was applicable to the question of his compliance with the 'hit-and-run' statute he should have complied because of use-restrictions which he could only have speculated might exist."

### Disposition

The judgment against defendant Kensington is affirmed. The judgment against defendant Marlin is reversed and remanded for further proceedings in accordance with the views above expressed, provided Marlin files an answer verified by him within 30 days of the date the remittitur is received by the superior court; otherwise, the judgment against defendant Marlin is affirmed. Plaintiff shall recover costs on appeal as against defendant Kensington; as between plaintiff and defendant Marlin, each party shall bear his own costs on appeal.

Cobey, J., and Allport, J., concurred.